

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-1996

# United States v. Brothers

Precedential or Non-Precedential:

Docket 95-1303

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation
"United States v. Brothers" (1996). *1996 Decisions.* Paper 225.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/225

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 95–1303

———————

UNITED STATES OF AMERICA

v.

CLAYTON S. BROTHERS a/k/a
CLAYTON COSOM a/k/a
JAKE

Clayton S. Brothers,
Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 94–360–02)

———————

Submitted Under Third Circuit LAR 34.1(a)
January 12, 1996

Before:  SCIRICA, ALITO, SAROKIN, Circuit Judges

(Opinion Filed: February 1, 1996)

                        Ellen C. Brotman
                        Elaine DeMasse
                        Federal Court Division
                        Defender Ass'n of Philadelphia
                        437 Chestnut Street
                        Lafayette Building, Suite 800
                        Philadelphia, PA 19106
                        Attorneys for Appellant

                        Joseph T. Labrum, III
                        Assistant    United    States
Attorney

                        615  Chestnut  Street,  Suite
1250

1

Philadelphia, PA 19106
<u>Attorney for Appellee</u>

---

OPINION OF THE COURT

---

SAROKIN, <u>Circuit</u> <u>Judge</u>:

The Federal Sentencing Guidelines are lenient in prescribing what a court may consider in determining the appropriate sentence. Although a court may consider information which would be inadmissible at the guilt phase, such information must have sufficient indicia of reliability to justify the court's reliance upon it.

In a drug case, the amount of drugs involved has a substantial impact upon the severity of the punishment. Accordingly the need for sufficient indicia of reliability is particularly manifest when findings regarding the quantity of drugs are predicated upon evidence which standing alone does not meet the higher standard of admissibility.

In the instant case, the defendant was convicted of a drug conspiracy after lending a small sum of money to his cousin for the purchase of cocaine and driving him to the site of the transaction. After conviction, the court increased the defendant's sentence based on the amount of drugs involved. We conclude that the hearsay evidence upon which the court relied in this matter, which was in direct conflict with the sworn testimony of the source, does not meet the test of reliability, and hold that the government did not meet its burden of establishing that Mr. Brothers knew the quantity of drugs involved in the transaction. Accordingly, the judgment of

3

sentence will be vacated and remanded to the district court for resentencing.

## I. **Facts and procedural posture**

On August 10, 1993, Clayton S. Brothers received a telephone call from his cousin, Torrance Cosom. Mr. Cosom had been negotiating a deal to purchase ten kilograms of cocaine for several days, for the price of $19,000 a kilo, or $190,000 overall. Mr. Cosom was supposed to meet with the alleged seller, Anthony Resto, and was calling to borrow the balance of the payment from his cousin. Mr. Cosom contends that he borrowed $6000 from his cousin; Mr. Brothers maintains that the amount was $3000.

In either event, Mr. Brothers agreed to Mr. Cosom's request, and lent him money. At his cousin's request, Mr. Brothers then drove him to the site where the deal was to be completed. When they arrived at the location, Mr. Cosom met with Mr. Resto by the trunk of the car, where the money was kept. They took the money to the back seat of the car, allegedly to complete the transaction.

Unfortunately for the two cousins, however, Mr. Resto was a witness cooperating with the government, and agents of the Federal Bureau of Investigation were monitoring the exchange. After an amount of time sufficient to collect the evidence they needed, the FBI agents descended on the scene and arrested Messrs. Cosom and Brothers. Mr. Cosom promptly pledged

4

cooperation and asked how he could help himself. Appendix at 100a. An FBI agent interrogated him, and in those conversations Mr. Cosom gave an account of Mr. Brothers's involvement in the transaction. Most relevant for our purposes here, Mr. Cosom claimed that Mr. Brothers was fully aware of the quantity of drugs at stake.

Messrs. Cosom and Brothers were not arrested at the time, but were placed under arrest later on and indicted for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846(a), attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and aiding and abetting, pursuant to 18 U.S.C. § 2. Mr. Cosom was also charged with two counts of possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §922(g)(1).

Both men pled guilty to one count of violating 21 U.S.C. §846(a). Mr. Cosom was sentenced to ten years in prison. However, a dispute arose during Mr. Brothers's sentencing as to whether Mr. Brothers was aware of the amount of drugs to be purchased by his cousin. The effect of such knowledge would be to significantly increase Mr. Brothers's sentence. The presentence investigation report concluded on the basis of Mr. Cosom's earlier statement that Mr. Brothers knew of his cousin's intent to purchase ten kilograms of cocaine. Through counsel, Mr. Brothers objected to the attribution of the drug weight to him.

A sentencing hearing ensued in the United States District Court for the Eastern District of Pennsylvania, at which Mr.

5

Brothers called Mr. Cosom to testify.  Under oath, Mr. Cosom repeatedly asserted that Mr. Brothers never knew the amount of cocaine involved in the failed transaction.  The government called the FBI agent who had initially interviewed Mr. Cosom. The agent testified to his interview with Mr. Cosom, and in particular to Mr. Cosom's statement that Mr. Brothers knew the amount involved in the transaction.

At the conclusion of the hearing, the court announced its conclusion that based on the evidence presented a transaction of over five kilograms was foreseeable to Mr. Brothers. Accordingly, he sentenced Mr. Brothers to 70 months imprisonment and five years supervised release.

Mr. Brothers now appeals his sentence on the grounds that the evidence was insufficient to support the court's conclusion that the appellant knew or should have known that the transaction negotiated by his co-conspirator involved more than five kilograms of cocaine.  In particular, Mr. Brothers argues that Mr. Cosom's statement attributing such knowledge to him, which Mr. Cosom contradicted in the sentencing hearing, lacked sufficient indicia of reliability to support the court's conclusion.

## II. Jurisdiction

The district court had jurisdiction over the criminal prosecution of Mr. Brothers for violations of laws of the United States pursuant to 18 U.S.C. § 3231.

6

We have jurisdiction over this appeal from the district court's final judgment pursuant to 28 U.S.C. § 1291.

### III. **Standard of review**

With respect to the district court's findings of fact, the government bears the burden of proof by a preponderance of the evidence. Miele, 989 F.2d at 663; United States v. McDowell, 888 F.2d 285, 290 (3d Cir. 1989). We review these findings to determine whether they are clearly erroneous. Miele, 989 F.2d at 663; McDowell, 888 F.2d at 291-92. However, we conduct plenary review of questions of law, such as the admissibility of hearsay statements.

### IV. **The "sufficient indicia of reliability" standard**

The use of hearsay in making findings for purposes of Guidelines sentencing violates neither the Sentencing Reform Act of 1984 nor the Due Process Clause. United States v. Sciarrino, 884 F.2d 95, 98 (3d Cir.), cert. denied, 493 U.S. 997 (1989); United States v. Inigo, 925 F.2d 641, 660 (3d Cir. 1991). The sentencing court can give a high level of credence to hearsay statements, going so far as to "credit hearsay evidence over sworn testimony, especially where there is other evidence to corroborate the inconsistent hearsay statement." U.S. v. Miele, 989 F.2d 659, 664 (3d Cir. 1993). However, in order to avoid "misinformation of constitutional magnitude," Sciarrino, 884 F.2d

7

at 97, we require that "information used as a basis for sentencing under the Guidelines . . . have 'sufficient indicia of reliability to support its probable accuracy.'" Miele, 989 F.2d at 663; see also United States v. Torres, 926 F.2d 321, 324 (3d Cir. 1991) (noting necessity that information upon which Guidelines sentences are based be reliable). The Sentencing Guidelines themselves provide:

> In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. § 6A1.3(a) (1995). The commentary to § 6A1.3 further provides:

> In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. § 3661. Any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means."

U.S.S.G. § 6A1.3(a), Commentary. We have held that "this standard ["sufficient indicia of reliability"] should be applied rigorously." Miele, 989 F.2d at 664.

8

In _Miele_, we vacated the sentence imposed on the defendant because the statements used to support the factual findings for sentencing were found to fall short of the "sufficient indicia of reliability" standard.  The statement at issue, involving the quantities of drugs transacted by the defendant, was from the testimony of Frank Habera, an informant and drug addict at the time of the events in question.  We outlined three flaws in the district court's reliance on Mr. Habera's statement.  First, we found that "[t]he vast disparity between Habera's estimate in the PSI and the significantly lower estimates he provided at the co-defendants' trial casts doubt on the reliability of the PSI's estimate, particularly in view of Habera's status as an addict informant."  _Id._ at 664.  Second, "the district court did not address the inconsistency between Habera's various estimates, and did not explain why it apparently followed Habera's hearsay estimate in the PSI rather than the lower estimates Habera provided under oath . . . ."  _Id._  Third, "no other witnesses testified as to specific drug quantities."  _Id._ at 65.  While there was ample evidence of Miele's "extensive and continued" involvement with cocaine, we found that "a determination that Miele's drug activity was substantial does not translate readily into a specific drug quantity finding, which is the ultimate issue for sentencing purposes."  _Id._ at 668.  In light of the inconsistencies in Mr. Habera's statements, the district court's failure to explain its adoption of the PSI statement over that under oath, and "the lack of other corroborating evidence to

9

support Habera's hearsay estimate," id. at 665, we vacated the sentence and remanded for further factfinding.  Id. at 668.

As the Third Circuit has emphasized in the past, we should exercise particular scrutiny of factual findings relating to amounts of drugs involved in illegal operations, since "the quantity of drugs attributed to the defendant usually will be the single most important determinant of his or her sentence." United States v. Collado, 975 F.2d 985, 995 (3d Cir. 1992).  This mandate is only reinforced when the court seeks to attribute the quantity of drugs to an accomplice.

> Accomplice attribution often results in a dramatic increase in the amount of drugs for which the defendant is held accountable, which translates directly into a dramatic increase in the sentence.  As we have explained, whether an individual defendant may be held accountable for amounts of drugs involved in reasonably foreseeable transactions conducted by co-conspirators depends upon the degree of the defendant's involvement in the conspiracy.  In assessing the defendant's involvement, courts must consider whether the amounts distributed by the defendant's co-conspirators were distributed "in furtherance of the . . . jointly-undertaken . . . activity," were "within the scope of the defendant's agreement," and were "reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake."  U.S.S.G. § 1B1.3, application note 1.  We wish to emphasize that in deciding whether accomplice attribution is appropriate, it is not enough to merely determine that the defendant's criminal activity was substantial.  Rather, a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical to ensure that the defendant's sentence accurately reflects his or her role.

Id.  This standard applies in particular when the court seeks to determine "whether a particular defendant may be held accountable

10

for amounts of drugs involved in transactions conducted by a co-conspirator."  Id. at 992.

## V. **The district court's analysis**

The court relied on certain factual findings in sentencing Mr. Brothers.  One central finding, which is in dispute here, is that Mr. Brothers had knowledge of the quantities of cocaine involved in the transaction that was to take place on August 10, 1993.  To reach its conclusion, the court relied on hearsay testimony by FBI Special Agent Bud Warner reporting alleged statements by Mr. Cosom imputing such knowledge to Mr. Brothers. As in Miele, Mr. Cosom contradicted his earlier, unsworn statement when he testified under oath at Mr. Brothers's sentencing hearing.  As in Miele, there was no other witness to corroborate the facts alleged in Mr. Cosom's earlier statement. The court, however, found that elements in the record constituted sufficient corroborating evidence to admit Agent Warner's hearsay testimony and, on that basis, the court chose to credit Mr. Cosom's earlier, unsworn statement over his later statements under oath.

### A. *The inconsistent statements*

During Clayton Brothers's sentencing hearing, the government called as a witness Special Agent Bud Warner, the FBI agent in the case.  Mr. Warner testified that he took Mr. Cosom into his custody on the day of the attempted drug sale, Appendix at 60a, that Mr. Cosom waived his constitutional rights, "stated that he did not want to be arrested and prosecuted for this crime," and

11

that "he would cooperate fully with the FBI."  Id.; see also id.
at 100a (Federal Bureau of Investigation report, Aug. 24, 1993)
("COSOM stated that he did not want to go to jail and inquired as
to how he could help himself.").  According to Mr. Warner, Mr.
Cosom told him that day that "Mr. Brothers was fully aware that
they were -- he was to pick up ten kilograms of cocaine that
day."  Id. at 61a.  Mr. Cosom did not disavow this statement in
subsequent proffer sessions.  Id. at 50a.

However, Mr. Cosom's own testimony during the sentencing
hearing contradicted the statement he allegedly made to Mr.
Warner.  When asked if Mr. Brothers knew prior to the deal that
Mr. Cosom intended to purchase ten kilograms of cocaine, Mr.
Cosom replied, "He never knew the amount."  Id. at 40a; see also
id. at 49a ("I don't think he knew about the ten.  He knew I was
going to meet somebody about the coke, though."); id. at 52a ("He
knew I was going to buy it, but he didn't know, you know, how
many, the amount."); id. at 54a (THE COURT: "Did he know how much
money you had?"; MR. COSOM: "No, I don't believe so."); id. at
56a (Q: "[I]s it your recollection that [Mr. Brothers] knew or
did not know the amount of drugs you were going to buy on the
date of this incident?"' A: "He didn't know.").[1]

---

[1]  The government suggests that Mr. Cosom admitted at Mr.
Brothers's sentencing hearing that Mr. Brothers knew of the
quantity involved.  Appellee's Brief at 4.  The government's
claim is based on the following exchange:
        THE COURT:      And he [Mr. Brothers] knew you were
    going down there to buy the ten K, right?
        MR. COSOM:      Yes.
Appendix at 55a.  Taken out of context, this exchange could
indeed support the government's claim.  In context, however, it
is clear that Mr. Cosom was commenting not on Mr. Brothers's

12

B. *The court's assessment*

Near the conclusion of the hearing, the court announced its decision on the issue, which we cite here verbatim:

> All right. I've given a considerable amount of thought to this case and I think the bottom line is that I'd be closing my eyes to the obvious if I were to find that the calculation by the probation officer here was inaccurate.
>
> It seems to me based on the facts we have before us that, first of all, the scope of the conspiracy was to buy a large amount of cocaine, in this case ten kilograms, and that it was reasonably foreseeable to Mr. Brothers, who knew the defendant, was a cousin of the defendant, had had prior dealings with him, it was reasonably foreseeable for him to suspect that there was going to be a great deal more than five kilograms purchased. And part of that is based upon, as I said, the knowledge he has of Mr. Cosom.
>
> The other part is based upon the obvious quantities of money that were involved here, that made it clear that the amount he was contributing was but a small portion of a large amount that was going to be used to purchase a substantial amount of drugs. And I think it's clearly foreseeable that that amount was over five kilograms.
>
> The other facts which support that are the testimony of Mr. Cosom and the -- as well as the statements he's made in the past, which I tend to believe the statements he made in the past were more accurate than those he made today in the presence of his cousin. And therefore I find that the base offense level of 32 is correct.

Appendix at 78a-79a.

Based on the court's statement, it appears that the court relied primarily on two factors in crediting Mr. Cosom's hearsay

---

knowledge of the quantity involved but on his knowledge of the purpose of the trip. Right after that exchange, Mr. Brothers's attorney jumped in to ask Mr. Cosom, "So that I'm clear, did -- is it your recollection that my client knew or did not know the amount of drugs you were going to buy on the date of this incident,?" id. at 56a, to which Mr. Cosom responded, "He didn't know." Id.

13

statements over those he made under oath, at the sentencing hearing: (a) Mr. Brothers's knowledge of Mr. Cosom through their family relationship and prior dealings; (b) the quantities of money involved.

## C. *The corroborating evidence*

The district court relied on two elements as corroborating evidence for Mr. Cosom's statement attributing to Mr. Brothers knowledge of the quantities of cocaine involved in the failed transaction of August 10, 1993: the personal relationship between the two men, and Mr. Brothers's presence at the site of the deal.

1. *Mr. Brothers's knowledge of Mr. Cosom*

The first element on which the court allegedly relied was the existing relationship between Messrs. Brothers and Cosom. There is simply nothing in the relationship that could constitute corroborating evidence for the claim that Mr. Brothers knew the quantities involved in the planned purchase on August 10, 1993. There is nothing about the fact that the two men are cousins that would indicate to Mr. Brothers that Mr. Cosom intended to purchase ten kilograms of cocaine.

As for Mr. Brothers's knowledge of Mr. Cosom's past history of drug dealing, far from supporting the government's position, it undermines it. The government points out in its brief that "Cosom [had] supplied Brothers with 4.5 ounce quantities of cocaine on three separate occasions." Appellee's Brief at 17; see also Appendix at 44-45a, 51-52a. If anything, the fact that Mr. Brothers's past drug transactions with Mr. Cosom involved relatively small amounts supports the position that it was not

14

reasonably foreseeable for him to expect that the August 10 transaction would involve ten kilograms of cocaine. While it is true that Mr. Cosom started buying kilogram quantities of cocaine in the Fall of 1991, Appendix at 49a, there is nothing in the record to indicate that Mr. Brothers knew of that fact.

2. *The sums of money involved*

The second piece of corroborating evidence mentioned by the court is the sums of money involved in the transaction. The amount involved, in and of itself, indicates nothing about Mr. Brothers's knowledge of the quantity of drugs involved. A correlation can only be made if Mr. Brothers <u>knew</u> how much money was involved, and if from that knowledge he could reasonably foresee the quantity of cocaine involved. The various elements from which such knowledge might be imputed include: (1) Mr. Brothers's loan to Mr. Cosom; (2) the conversation between Mr. Cosom and the government informer, Anthony Resto, during the transaction; (3) the presence of the bags containing the money in the car; and (4) Mr. Brothers's statement supporting his cousin's representation to the government informant that all the money was there.

First, no knowledge of the quantity of cocaine involved can be imputed from the amounts of money that Mr. Brothers lent Mr. Cosom. The court found that the amount of the loan was $6000, which according to Agent Warner would suffice for a wholesale purchase of "probably a quarter kilo of cocaine." Appendix at 69a. There is no reason to conclude that, based on his loan of $6000 to his cousin, Mr. Brothers could somehow foresee that the

15

total amount of the transaction -- $190,000 -- was more than thirty times that amount.

Second, the conversation between Messrs. Cosom and Resto, as it is transcribed in the record, cannot support such a finding either. The government states that "[i]n the consensual recording of the August 10 meeting, Cosom, referring to the cash-laden gym bag, told Resto, in the presence of Brothers, that, 'There's two hundred there.'" Appellee's Brief at 15. The transcript of the recording indicates that the following exchange took place:

AR: You got it a lot of bags?

TC: Only in one big bag.

AR: Well, just put it in the car.

TC: What car? Your car?

AR: No, your car.

TC: I ran it.

AR: I know, but I don't want to be reachin in the trunk, you know what I'm sayin'.

TC: Oh, you want me to put the money in it.

AR: Yeah, just put it in the back seat. Fuck it. Put it, just put it in the back seat like this.

TC: You sit in it.

TC: There's two hundred there.

AR: What's up, aye?

CB: I'm Jake, man.

Appendix at 96a-97a. We know that the following sequence of events occurred: Messrs. Cosom and Resto went to the trunk of

16

Mr. Cosom's car to look at the two bags containing the money, and they took those bags to the back seat of Mr. Cosom's car. The whole time, Mr. Brothers was sitting in the driver's seat of Mr. Cosom's car. What we don't know is how the images fit with the soundtrack -- i.e., the transcript. That is, we don't know where the participants were when certain words were said. In particular, we do not know where Messrs. Cosom and Resto were when Mr. Cosom told Mr. Resto, "There's two hundred there." They could have been in the back seat, audible to Mr. Brothers; they could just as easily have been standing outside the car, having just put the bags inside, and beyond Mr. Brothers's auditive reach. (Messrs. Brothers and Resto did not greet each other until after this exchange.) There is simply no way to favor one scenario over the other, and no support for the government's claim that "the transcript of the August 10 meeting, read in context, establishes that Brothers was present at the time Resto placed the money in the back seat of the vehicle and Cosmo advised him that there was $200,000 present there." Appellee's Brief at 22. Therefore, because there is no way to conclude that Mr. Brothers did hear the reference to "the two hundred," we find that the exchange could not constitute an indicia of reliability for Mr. Warner's hearsay statement. (Furthermore, as Mr. Brothers rightly argues in his brief, "Cosom could just as easily have been pointing to a bundle which contained two hundred dollars." Appellant's Reply Brief at 5.)

17

Messrs. Cosom and Resto had a second conversation regarding money during the attempted drug purchase, this one clearly in the presence of Mr. Brothers.

AR:  What, what this in staacks [sic] of bill?

TC:  Hum?

AR:  I'm sayin, I'm sayin. . .

TC:  These five, these five.

AR:  Oh, alright, man.

AR:  Five "G's."

TC:  There's two bags.  There's another bag under that.  See it?  It's a white bag.

CB:  Yeah, with the ink stains.

AR:  This is what?

TC:  That's five.  Five grand.

AR:  Five.

TC:  That's a grand, that's a grand.  (unintelligible)

AR:  Five.

TC:  Five.  Five, five, five, five.

Appendix at 97-98a.

Again, with just the sound and no image, it is impossible to infer from this exchange any knowledge on the part of Mr. Brothers.  We do not know whether he was looking at the other protagonists as the conversation was taking place; and if he was, we do not know what he could and could not see, or whether or not the various stacks were in his line of vision.

The third possible indication that Mr. Brothers had knowledge of the sum of money involved, and could therefore

18

reasonably foresee the quantity of drugs at stake, is the presence of the two money-filled bags in the back of the car. Again, though, there is no evidence that Mr. Brothers had a full view of the bags, that he could translate what he could see into an approximate sum of money, and that he could establish a correlation between the estimated sum of money and the quantity of drugs it could purchase. The cost of buying just under five kilograms of cocaine at the time of the failed transaction was close to $100,000. Even that amount, in small enough denominations -- say $10, $20 or even $50 bills -- would have taken up quite a bit of space. The presence of the two bags, therefore, was not corroborating evidence for Mr. Warner's hearsay statement. (There is also no evidence that photographs of the two bags open, with the money clearly visible, correspond to the state of the bags when they were within Mr. Brothers's sight.)

Finally, the fourth possible evidence is a statement by Mr. Brothers during the transaction. An exchange took place during which Mr. Resto was trying to ensure that all the money he was to receive for payment was contained in the two bags.

AR: But it ain't short, right?

TC: It ain't short.

CB: He said it's right, man.

Appendix at 98a. This does not necessarily represent evidence of Mr. Brothers' personal knowledge of the amount involved, but more likely, as Mr. Brothers contends, a statement that "merely

19

evinces support for Cosom and a desire to conclude a deal."
Appellant's Brief at 16.

### D. *The more reliable statement*

The district court gave one final reason for its finding regarding Mr. Brothers's knowledge of the quantity of drugs involved: "I tend to believe the statements [Mr. Cosom] made in the past were more accurate than those he made today in the presence of his cousin." Appendix at 79a.

Of course, assessments of credibility by the trial court are entitled to great deference at the appellate level. However, the past statement of Mr. Cosom, reported as hearsay by Agent Warner, lacked "sufficient indicia of reliability to support its probable accuracy" and therefore could not support the court's conclusion regarding Mr. Brothers's knowledge of the amount of drugs involved. There was simply no occasion for the court to compare the credibility of a hearsay statement that was not properly admitted with that of another statement made under oath.

We note, however, that both sides have commented on the issue of the statements' respective credibility. We are not persuaded by the government's description of Mr. Cosom's earlier statement as "made at a time when Cosom had no motive to protect his cousin or to fabricate falsehoods." Appellee's Brief at 11. Mr. Cosom's earlier statement was made right after he "inquired as to how he could help himself." Appendix at 100a. There is a motive right there: in the context of this case, it seems no less plausible that Mr. Cosom would make up certain facts that could be of use to the police against an accomplice in order to reduce

20

a certain prison sentence than that he would lie on the stand and under oath to protect a member of his family.

## VI. Conclusion

Because of Mr. Cosom's inconsistent statements and the lack of "sufficient indicia of credibility" for Mr. Warner's hearsay testimony, the district court committed clear error under <u>Miele</u> when it used as a basis for its sentencing of Mr. Brothers the information contained in Mr. Cosom's earlier statement. Therefore, we vacate the judgment of sentence and will remand to the district court for resentencing in accordance with this opinion.