**UNITED STATES of America,**

v.

**Stephanie WHITFIELD, Defendant.**

**No. Crim.A. 99–283–2.**

United States District Court,
E.D. Pennsylvania.

Feb. 28, 2000.

John Minges, United States Attorneys Office, Philadelphia, PA, for plaintiff.

Robert Marc Gamburg, Philadelphia, PA, for defendant.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

Stephanie Whitfield pled guilty before this court to conspiracy to possess and to possess with the intent to distribute cocaine base in violation of 21 U.S.C. § 846 and to possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). The defendant's plea was open, and she specifically stated her intention to raise several issues at the time of sentencing. At the sentencing hearing held on February 25, 2000, she challenged the quantity of drugs properly attributable to her as well as the government's claim that she possessed a firearm. She also argued that she merited a downward departure based on coercion or extraordinary rehabilitation. The court writes to supplement its bench rulings on these issues.

### I. Background

The court makes the following factual findings based on the submissions of the parties and the evidence adduced at the hearing.

At approximately 7:00 p.m. on February 9, 1999, narcotics officers from the Philadelphia Police Department's Seventeenth District were conducting surveillance on a home at 1925 Ellsworth Street in Philadelphia based on complaints they had previously received about drug sales. The officers became suspicious after they saw a woman later identified as Whitfield admit four different people into the home, each of whom stayed for only a short time. Believing that Whitfield was selling drugs, police officers stopped the suspected buyers after they had left the property and found that each person possessed green tinted packets containing cocaine base.

The officers then devised a scheme by which an undercover officer would knock at the door of the home and attempt to purchase narcotics from Whitfield. At approximately 8:00 p.m., an officer walked to the home and stood in a small line that had formed. Because she did not know him, Whitfield attempted to ascertain the undercover officer's identity. Following an unsuccessful effort to purchase drugs, the undercover officer identified himself and informed Whitfield that she was under ar-

rest. In response, Whitfield fled into the home, shouting that police were present. The officers pursued her and arrested her on the second floor, finding seven packets of cocaine base on her person.

While pursuing Whitfield, the officers ran through the bedroom of James Hayes, a co-defendant who has also entered a guilty plea. When the officers·returned to Hayes' bedroom after arresting Whitfield, they recovered a .38 caliber handgun lying on the floor near Hayes, and, after obtaining consent to search, they found 27.25 grams of cocaine base wedged into the heat register. In a locked safe that Hayes opened, they also found $600.00 and two plastic bags containing 26.48 and 27.78 grams of cocaine base. Finally, on a folding television tray in the same bedroom, the officers found seventeen packets of cocaine base packaged in the same manner as the cocaine base found on Whitfield and on the buyers.

In calculating the presentence investigation, the Probation Office attributed 81.5 grams of cocaine base to Whitfield, for an offense level of 32. *See* PSI ¶ 18. The Probation Office also assigned a two-level enhancement under U.S.S.G. § 2D1.1(b)(2) based on the fact that a handgun was "found in plain view and in proximity to the narcotics and other drug paraphernalia." PSI ¶ 19. With a three-level decrease for acceptance of responsibility, the PSI calculated the defendant's total offense level at 31, for a sentencing range of 108–135 months. The government agreed with these calculations. Under the PSI, Whitfield's effective range is actually 120–135 months, however, because of a ten-year mandatory minimum required by statute. *See* 21 U.S.C. § 841(b)(1)(A).

## II. Discussion

Whitfield raised three objections to the application of the Sentencing Guidelines as calculated by the government and the Probation Office.

### A. The Appropriate Drug Quantity

Whitfield agreed that she should be attributed with the seven packets of cocaine base found on her person and the seventeen packets on the television tray that had been prepared for sale. According to representations of counsel at the sentencing hearing, she also agreed that she should be attributed with the cocaine base found on the buyers who were stopped. The defendant argued, however, that she should not be attributed with the cocaine base found in the safe and behind the heat register because such quantities were not reasonably foreseeable to her given the scope of her agreement to the jointly-undertaken criminal activity.[1]

Because of the Sentencing Commission's decision to tie sentences almost exclusively to drug quantity, assessment of drug weight is often the single most important factor in calculating a defendant's term of imprisonment. *See United States v. Collado*, 975 F.2d 985, 990 (3d Cir.1992). Under U.S.S.G. § 1B1.3(a)(1), "in the case of a jointly undertaken criminal activity," whether charged as a conspiracy or not, the defendant's base offense level is calculated on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity ... that occurred during the commission of the offense of conviction[.]" *Id.* That is, a defendant convicted of conspiracy may be liable for drug weights that she did not herself distribute or even know

---

1. The court notes an inconsistency in the total drug quantities. The 81.5 grams attributed to Whitfield by the Probation Office is seemingly reached by adding the weights of the cocaine base found in the heat register and the safe in James Hayes' bedroom (27.25, 26:48, and 27.78 grams) without reference to any amounts found on the television tray, on Whitfield's person, or on the buyers. At the

hearing, however, when calculating the total quantity of drugs, counsel suggested that the 81.5 grams included the packaged drug quantities, arguing that the weight of the unpackaged cocaine was actually approximately 78 grams. The court need not resolve this issue, as it does not attribute Whitfield with the drugs found in the safe or the register.

about. *See Collado,* 975 F.2d at 990; *United States v. Mitchell,* Crim. A. No. 95–00252, 1999 WL 1129628, at *1 (E.D.Pa. Nov.30, 1999). It is the government's burden to demonstrate by a preponderance of evidence that the defendant should be attributed with a given quantity of drugs. *See, e.g., United States v. Paulino,* 996 F.2d 1541, 1545 (3d Cir.1993).

When making these assessments, the "courts should look to the defendant's role in the conspiracy," *Collado,* 975 F.2d at 991, focusing on whether the drug quantities were reasonably foreseeable given the scope of the conduct to which the defendant herself agreed. *See id.* "[W]hether an individual defendant may be held accountable for amounts of drugs involved in reasonably foreseeable transactions conducted by co-conspirators depends upon the degree of the defendant's involvement in the conspiracy." *Id.* at 995. The court cannot attribute the entire disputed quantity of drugs to Whitfield based solely on the fact that she pled guilty to a conspiracy, a point acknowledged even by the Sentencing Guidelines themselves. *See* U.S.S.G. § 1B1.3 app. note 1 ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability."). Nor may the court rely solely on the fact that a defendant's "criminal activity was substantial. Rather, a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical to ensure that the defendant's sentence accurately reflects his or her role." *Collado,* 975 F.2d at 995; *see also Paulino,* 996 F.2d at 1545 (stating that courts must "carefully scrutinize the government's proof" in estimates of drug quantities attributable to a given defendant). In light of these instructions, the court must look to whether the amounts of cocaine found in defendant Hayes' room were part of the jointly-undertaken activity, were within the scope of the defendant's agreement, and were reasonably foreseeable given the criminal actions that Whitfield agreed to undertake. *See, e.g., United States v.*

*Brothers,* 75 F.3d 845, 849 (3d Cir.1996) (citing *Collado* ).

In support of its position that Whitfield should be attributed with the full amount of drugs, the government presented testimony from two individuals, Sergeant Michael Frisco, one of the officers participating in the arrest, and John Cohen, a Drug Enforcement Agency officer. Frisco testified that the officers pursued Whitfield into the home after she fled, that she shouted "police!" while she was running, and that she was apprehended in possession of an amber bottle containing seven packets of cocaine base. Frisco also testified as to the arrest of Hayes and the contraband found in his room, noting that the bedroom was accessible to Whitfield. The parties agreed that Cohen was qualified as an expert, and he described his extensive experience in narcotics investigations. He explained that firearms are often kept at locations where drugs are being sold. Cohen also described the typical relationship between low-level sellers and their "superiors," noting that the superiors frequently conceal the true drug quantity from the street seller, particularly when that seller is also a user.

According to the government, four basic facts indicate that Whitfield should be attributed with the full amount of drugs: (1) the number of transactions made that night and her attempt to ascertain the identity of the undercover officer indicated that she was an experienced seller, (2) she attempted to alert others to the police presence, (3) even if Whitfield was unaware of the total amount of drugs, she knew that there were packets available to resupply her if she ran out, and (4) Whitfield had access to the room in which the drugs were kept.

The court finds that the testimony and argument presented by the government did not establish by a preponderance of evidence that the full amount of crack was reasonably foreseeable to Whitfield, even giving full credit to the testimony of both Frisco and Cohen. The government

made no attempt to prove that Whitfield had sold drugs on any other occasion, nor did the government argue that Whitfield agreed to sell drugs in the future, although the amount of drugs found in Hayes' room was clearly too great to be sold on one evening. Thus, the court is left only with the transactions of one night. Whitfield herself testified that she was an addict who sold the amounts given to her by Hayes in exchange for drugs and a place to stay.[2] There was no testimony indicating that Whitfield agreed to long-term or larger-scale drug transactions, and, as Agent Cohen himself testified, it is not uncommon for low-level sellers to be unaware of the full scope of the enterprise. Particularly given that the total weight of the drugs packaged for her to sell that night was, as discussed subsequently, quite small, there is no basis for concluding by a preponderance of the evidence that she had agreed to a conspiracy contemplating the sale of more than eighty grams of cocaine base.

As to the argument that one must infer by a preponderance of the evidence that Whitfield was a "seasoned street level dealer" because of her efforts to ascertain the identity of the undercover police officer, the court credits Whitfield's testimony that Hayes explicitly told her not to sell to anyone she did not know. In any event, it is certainly not a necessary inference that only someone who had agreed to engage in a large-scale drug enterprise would try to discover the identity of buyers. Moreover, the court sees no reason why only a veteran drug-dealer would attempt to inform housemates that a police raid was in progress.

The court agrees that this situation is one analogous to that described in application note 2(c)(5) to U.S.S.G. § 1B1.3, which describes the following scenario:

Defendant O knows about her boyfriend's ongoing drug-trafficking activity, but agrees to participate on only one occasion by making a delivery for him at his request when he was ill. Defendant O is accountable under subsection (a)(1)(A) for the drug quantity involved on that one occasion. Defendant O is not accountable for the other drug sales made by her boyfriend because those sales were not in furtherance of her jointly undertaken criminal activity (*i.e.*, the one delivery).

*Id.* In this case, while Whitfield may have been aware that Hayes' transactions were seemingly of a larger scale than those with which she was involved, there is no evidence that Whitfield agreed to participate in such a large-scale venture or that possession of such an amount of drugs in furtherance of their agreement was reasonably foreseeable.[3]

The court finds that Whitfield should be attributed only with the packaged drugs found on her person, on the buyers, and on the television tray. Both counsel represented to the court that only "representative" samples of these packages had been weighed and that all quantities were only estimates. Based on averages of the packages actually weighed, counsel submitted various quantity estimates, none of which were less than three grams. Although the government proposed amounts slightly in excess of four grams, in keeping with the Third Circuit's admonition that the court should carefully scrutinize such estimates, the court agrees with defense counsel that the appropriate quantity to attribute is between three and four grams of cocaine base. Particularly given the significant increase in offense level based on very small drug quantities, the court is not willing to attribute the larger amounts suggested by

2. Although the government attempted to argue that the testimony of Catherine Freund, a counselor at the treatment program Whitfield is attending, indicated that Whitfield was not an addict, the court finds that Freund only testified that Whitfield did not appear to be under the influence of cocaine base at the time she initially met with her.

3. The court stresses that it is not making any ruling as to the amounts of drugs properly attributable to Hayes, who has not yet been sentenced.

the government (ranging up to 4.29 grams), given the seemingly imprecise methods used to estimate these amounts.

Accordingly, the court rejects the PSI's conclusion that Whitfield should be attributed with 81.5 grams of cocaine base and instead attributes between three and four grams to her. This establishes a base offense level of 22, with a corresponding sentencing range of 41 to 51 months.

### B. The Enhancement for the Firearm

The defendant argued that she should not receive a two-level enhancement for possession of a "dangerous weapon" under U.S.S.G. § 2D1.1(b)(1). The application notes for this section state that this enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Id.* app. note 3. This enhancement is to be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*

As this court stated in a similar case, the "government has the burden of proving by a preponderance of evidence that the defendant possessed the weapon." *United States v. Ortiz,* 31 F.Supp.2d 469, 471 (E.D.Pa.1999). While possession in this context may be actual or constructive, the necessary dominion or control is not established by mere proximity to the weapon. *See id.* The government also has the burden of proving that the connection between the weapon and the defendant's own crime

is not "clearly improbable." *See id.; also United States v. Price,* 13 F.3d 711 (3d Cir.1994)

■ The government has not met its initial burden of showing possession. The government argued that because Whitfield had access to the room where the gun was found, she constructively possessed the weapon. The court notes that Whitfield's co-defendant, Hayes, pled guilty to a count charging possession of a firearm by a convicted felon. While this is not dispositive, it lends credence to Whitfield's argument that the weapon was not hers. More importantly, the government's argument relies almost entirely on proximity and would seemingly lead to the conclusion that anyone who had ever lived in or been in the home would "possess" the weapon. Without additional facts showing some connection between Whitfield herself and the weapon, there is no evidence that she exercised the necessary control over the weapon.[4] Accordingly, the court finds that Whitfield should not receive a two-level enhancement for possession of a dangerous weapon.[5]

### C. The Motion for a Downward Departure

■ Whitfield sought a departure based on coercion or duress as well as a departure based on extraordinary rehabilitation. The court acknowledges its ability to depart on both of these bases. *See United*

---

**4.** Although it is not necessary to reach the second issue, whether the government demonstrated that it was not clearly improbable that the weapon was connected to Whitfield's crime, the court also finds that this burden has not been met. There is no evidence that Whitfield's own drug transactions were assisted by the threat of the weapon or even that Whitfield knew of the gun's existence.

**5.** Because the drug quantity attributed to Whitfield is below the level that implicates a statutory mandatory minimum, *see* 21 U.S.C. § 841(b)(1)(C), and because the base offense level is below 26, *see* U.S.S.G. § 2D1.1(b)(6), the safety valve determination is not relevant to sentencing.

Were such a determination necessary, the court would find, as it did at the sentencing hearing, that the defendant qualified for the safety valve: She has no prior criminal history; she was not involved in any violence and did not possess a firearm; no victim suffered bodily injury; she was not a leader or organizer of the offense; and the court finds that she truthfully provided information to the government no later than the time of sentencing. *See* 18 U.S.C. § 3553(f), U.S.S.G. § 5C1.2. While the government challenged this last component, Whitfield testified at the sentencing hearing and the government chose not to cross-examine her extensively; the court also credits defense counsel's representation that Whitfield attended proffer sessions and had little information to give.

*States v. Sally,* 116 F.3d 76 (3d Cir.1997) (permitting departures for rehabilitation); *United States v. Cheape,* 889 F.2d 477, 480 (3d Cir.1989) (permitting departures for duress or coercion); U.S.S.G. § 5K2.12 (including duress or coercion that does not rise to the level of a defense at trial as an "encouraged" basis for departure). The court finds, however, that the defendant has not met her burden of showing that she warrants such a departure. While the court commends the strong commitment Whitfield has demonstrated to her own recovery, there was no evidence adduced that removes her case from the heartland. *See Koon v. U.S.,* 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Similarly, the evidence on coercion and duress was not sufficient to justify a departure, particularly given that the only proof submitted was the defendant's equivocal testimony: although she stated that she was pressured to sell drugs, she also stated that she was not "coerced."

III. Conclusion

The government has not met its burden of proving that the court should attribute 81.5 grams of cocaine base to Whitfield for sentencing purposes, and the court accordingly calculates her offense level at 22 based on the attribution of between three and four grams of cocaine base. The court agrees that the defendant deserves a three-level downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, reducing her offense level to 19, for a sentencing range of 30 to 37 months. Although the court finds that the firearm enhancement should not be applied, no further downward adjustment under the safety valve is permitted because the defendant's offense level is below 26. As the court finds that no downward departure is warranted, the sentencing range is 30 to 37 months and, as explained at the hearing, the court imposes a sentence of 30 months.

### *ORDER*

AND NOW, this 28th day of February, 2000, upon consideration of the defendant's sentencing memorandum, the government's response, and after a hearing, the court makes the following findings:

1. The defendant is responsible for between three and four grams of cocaine base for sentencing purposes.

2. The defendant does not warrant a two-level enhancement for possession of a firearm.

3. The defendant does not qualify for a departure pursuant to U.S.S.G. §§ 5K2.0 or 5K2.12 based on coercion or rehabilitation.

Accordingly, the defendant's offense level is calculated as follows: Defendant's base offense level, based on the quantity of drugs is 22. This is reduced by three levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, placing the defendant at a total offense level of 19, with a sentencing range of 30 to 37 months. The court imposes a term of imprisonment of 30 months, as recorded in the judgment of conviction.