

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-31-2006

# USA v. Matthews

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3388

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Matthews" (2006). *2006 Decisions.* Paper 1023.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1023

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3388

UNITED STATES OF AMERICA

v.

FERNANDO GERALD MATTHEWS,
Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Crim. 04-cr-00889-3
District Judge:  The Honorable Stanley R. Chesler

Submitted Under Third Circuit LAR 34.1(a)
May 11, 2006

Before: BARRY, SMITH and TASHIMA,[*] Circuit Judges

(Filed: May 31, 2006 )

OPINION

---

[*] The Honorable A. Wallace Tashima, Senior Circuit Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

BARRY, <u>Circuit Judge</u>

Fernando Gerald Mathews[1] appeals his 87-month sentence for conspiracy to import more than 100 grams of heroin. He claims that the District Court committed clear error when it found that all 482 grams of heroin imported by the conspiracy was attributable to him, resulting in a base offense level of 28. We find that the District Court did not err, and will affirm the judgment of sentence.

**I.**

On January 26, 2004, United States Immigration and Customs Enforcement ("ICE") special agents arrested Lizbeth Ortega-Rojas and Rafael Rivas at Newark Liberty International Airport after they arrived on a flight from Panama City, Panama. Rivas was carrying $2,000 in counterfeit U.S. currency, and 482 grams of heroin was found on Ortega-Rojas. Upon her arrest, Ortega-Rojas agreed to cooperate with federal agents and make a controlled delivery of the drugs to her New York contact. Originally, Rivas was supposed to meet with Ortega-Rojas after landing to pay her a smuggling fee and arrange for the delivery of the drugs in the United States. Therefore, when Ortega-Rojas made recorded phone calls to her New York contact, named "Fulo," and to her Panamanian contact, named Roberto Kelly, she told them that Rivas had been stopped by Customs.

---

[1] Mathews's name is incorrectly spelled in the caption and on the covers of the briefs. We will, however, use the spelling of his name that is consistent with the record in this case.

2

Fulo and Kelly both called Mathews, who was designated as Rivas's New York contact, and asked him to pick up Ortega-Rojas from a hotel near the airport. For a fee of $700, Mathews agreed.

The next morning, January 27, Mathews met with an associate of Fulo and Kelly's in Brooklyn to pick up approximately $6,000[2]—$700 for his fee and the rest to pay Ortega-Rojas—and proceeded to the Newark hotel. Mathews arrived at Ortega-Rojas's hotel room, where, in a videotaped encounter, she handed him a package of "pseudo" heroin.[3] Upon accepting the package, Mathews said "very talented" in Spanish (A. 84.), and put the package into the waistband of his pants. As the two attempted to leave the hotel, Mathews was arrested by ICE agents.

Mathews pled guilty to conspiracy to import more than 100 grams of heroin, in violation of 21 U.S.C. §§ 952(a), 960(b)(2)(A), and 963. At sentencing, he argued for a minor role adjustment under U.S. Sentencing Guidelines Manual ("Guidelines") section 3B1.2, and a base offense level of 26 under Guidelines section 2D1.1(c)(7)—a level corresponding to at least 100 but less than 400 grams of heroin. He claimed that he should only be sentenced based upon the minimum amount of drugs he pled guilty to

_____

[2] The Presentence Investigation Report lists this amount as $6,000, but the record reflects that Mathews picked up either $5,000 or $5,700.

[3] "Pseudo" heroin is a substance that looks, tests, and smells like real heroin. It was used by ICE in lieu of the real heroin, in the exact amount actually smuggled, in order to prevent the real drug from accidentally entering the marketplace in the event something went wrong during the controlled delivery.

conspiring to import because he did not know he was involved in a drug conspiracy until the moment Ortega-Rojas put the package of pseudo heroin into his hands. Additionally, he argued that the controlled sale was a "reverse sting" in which the government was responsible for the amount of drugs involved in the transaction.

The government countered by presenting testimony from an ICE special agent involved in the investigation that, after his arrest, Mathews admitted he knew he was going to the hotel to pick up drugs from Ortega-Rojas, and that Rivas told the agents after his arrest that Mathews was to be his New York contact upon arriving in Newark.

The District Court credited the agent's testimony and adopted the Probation Office's recommendations, denying the minor role adjustment and attributing the full 482 grams of heroin to Mathews. With regard to the drug amount, the Court stated: "Under [these] circumstances the Court has absolutely no qualms whatsoever with regard to attributing to Mr. Mathews the quantity of drugs which his co-conspirators in fact endeavored to bring into the United States and the amount of drugs which was the object of the conspiracy which he joined." (A. 182-83.) As a result, his base offense level was 28 under Guidelines section 2D1.1(c)(6)—a level corresponding to at least 400 but less than 700 grams of heroin. After a downward adjustment for acceptance of responsibility, Mathews's total offense level was set at 25, which, when combined with his criminal history category of IV, resulted in a Guidelines range of 84 to 105 months. The Court sentenced Mathews to 87 months' imprisonment and five years' supervised release.

Mathews now appeals his sentence and, in particular, the attribution to him of the entire 482 grams of heroin.[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the District Court's findings of fact regarding the amount of heroin attributable to Mathews for clear error. *See United States v. Perez*, 280 F.3d 318, 352 (3d Cir. 2002).

## II.

Calculation of the base offense level for a conspiracy to import more than 100 grams of heroin requires a determination under the Guidelines' Drug Quantity Table, § 2D1.1(c), of the amount of heroin attributable to the defendant. *See United States v. Collado*, 975 F.2d 985, 990 (3d Cir. 1992). There are two ways by which a sentencing court can determine the amount. First, "the defendant is accountable for all quantities of contraband with which he was directly involved." U.S.S.G. § 1B1.3 cmt. n.2. "[A]ll acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" are included. *Id*. § 1B1.3(a)(1)(A). Second, in cases involving "jointly undertaken criminal activity,"[5] the defendant is accountable for "all reasonably foreseeable quantities of contraband that were within the scope" of that activity. *Id*. § 1B1.3 cmt. n.2. Included in this are "all reasonably foreseeable acts and

---

[4] Mathews does not appeal the District Court's refusal to grant him a minor role adjustment.

[5] "[J]ointly undertaken criminal activity" includes "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3(a)(1)(B).

omissions of others in furtherance of the jointly undertaken criminal activity." *Id*. §

1B1.3(a)(1)(B).

## A.

Mathews argues, first, that the District Court failed to make an explicit factual

finding as to why the 482 grams of heroin was attributable to him. We disagree.

The Court rejected Mathews's contention that he did not know he was engaging in

a conspiracy to import heroin until Ortega-Rojas handed him the package of pseudo

heroin. It cited the $6,000 Mathews brought to the hotel, his prior narcotics conviction,

his behavior after accepting the drugs, and the testimony of the ICE agent as evidence of

his knowledge. These findings sufficiently articulated the basis for the Court's

conclusion, discussed further below, that Mathews should be deemed responsible for the

482 grams of heroin imported by the conspiracy.

## B.

Mathews contends, next, that the District Court erred by attributing the 482 grams

of heroin to him because he was neither directly involved in the importation of that

amount, nor was it reasonably foreseeable to him that the conspiracy involved that

amount. He argues that he "played a limited role" in the conspiracy and did not even

become a member of the conspiracy until after the heroin had been smuggled into the

country. Moreover, he contends that because fake heroin was used, he never possessed

any drugs and, in any event, did not raise the money to buy the drugs. His total involvement, he claims, was limited to picking up the $6,000 in Brooklyn and delivering it to Ortega-Rojas in exchange for a package he did not know would contain drugs.

To accept Mathews's contentions would require us to find that the District Court's factual findings were clearly erroneous.[6] This we will not do. The District Court found that Mathews knew he was delivering $6,000 to pay Ortega-Rojas for importing heroin into the United States and knew he was accepting delivery of that heroin. The record fully supports these findings. Mathews admitted that he was to deliver $6,000 to Ortega-Rojas at the hotel, and was to receive $700 for his troubles. After receiving the package of pseudo heroin from Ortega-Rojas, Mathews said "very talented" in Spanish, which the arresting ICE agent interpreted as meaning something to the effect of "nice job." (A. 84, 155.) Instead of opening the package to see what was inside, Mathews put it in the waistband of his pants and attempted to leave the hotel with Ortega-Rojas. When he entered his guilty plea, Mathews stated under oath that he knew he was delivering the $6,000 to Ortega-Rojas in exchange for the heroin. Furthermore, the ICE agent's testimony indicated that Mathews knew as early as the day before the flight landed in

---

[6] Because "the quantity of drugs attributed to the defendant usually will be the single most important determinant of his or her sentence," *United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992), we exercise "particular scrutiny of factual findings relating to amounts of drugs involved in illegal operations," *United States v. Brothers*, 75 F.3d 845, 849 (3d Cir. 1996).

7

Newark that Rivas and Ortega-Rojas would be arriving and that he would serve as Rivas's contact person and might have to pick Rivas up from the airport.

What Mathews knew and what he did were more than enough to support a conclusion that he was "directly involved" in the importation of 482 grams of heroin. In *United States v. Lockhart*, 37 F.3d 1451, 1452-54 (10th Cir. 1994), the defendant drove his co-conspirator to a restaurant in order to purchase cocaine, knowing that this was the purpose of the trip. After his co-conspirator purchased the drugs, both men were arrested. The defendant pled guilty to conspiracy to possess with intent to distribute cocaine. The defendant objected to being sentenced on the basis of the full quantity of drugs the co-conspirator purchased because he claimed the amount was unforeseeable to him. The Court of Appeals for the Tenth Circuit ruled that foreseeability was irrelevant because under Guidelines section 1B1.3(a)(1)(A), the defendant was directly involved in the conspiracy given that he knowingly aided and abetted the transaction. So, too, here. The District Court's finding that all 482 grams of heroin was attributable to Mathews was not clearly erroneous.[7]

## III.

The judgment of sentence will be affirmed.

---

[7] We note, parenthetically, that it is irrelevant in this conspiracy case that Mathews never, in fact, possessed the real heroin. *See*, *e.g.*, *United States v. Sanders*, 979 F.2d 87, 93 (7th Cir. 1992) (rejecting defendant's argument that he could not be sentenced based on quantity of fake cocaine received because he was convicted for *conspiracy*, not possession or distribution, "making the prop substance completely immaterial").