NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4831
_____

UNITED STATES OF AMERICA

v.

KURT MAXSHURE,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 11-cr-00185)
District Judge:  Honorable Maurice B. Cohill, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2014

Before:  FISHER, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: September 16, 2014)
_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Kurt Maxshure pleaded guilty to federal drug charges and was sentenced to 235

months' imprisonment and five years of supervised release. He appeals the District

Court's calculation of the drug quantity that determined his base offense level under the

United States Sentencing Guidelines (USSG). We will affirm.

I

Maxshure was arrested as part of a DEA investigation into Pittsburgh-area cocaine distribution that involved extensive wiretap and police surveillance. On July 15, 2011, police observed three men park a semitrailer truck, fill gym bags with the contents of the truck, and place the gym bags in a nearby shed. They then observed Maxshure pull up in a Honda Accord and park next to the truck as the gym bags were retrieved from the shed and placed in the trunk of Maxshure's car.

After leaving the scene, Maxshure was heard on the wiretap discussing a meeting place where he could sell cocaine to co-defendant Darnell Edge. Maxshure suggested they meet at a home on Lincoln Avenue, but ultimately agreed to meet Edge on a nearby corner. Police observed Maxshure entering the home and reemerging with a gym bag before meeting with Edge. They watched as a bag was transferred from Edge's truck to Maxshure's car, and as another bag was transferred from Maxshure's car to Edge's truck. Shortly thereafter, Maxshure was arrested. DEA agents retrieved the gym bag from his car, which contained $399,950, and they found another $4,000 in his glove compartment. Around the same time, Edge was arrested. DEA agents retrieved the gym bag in his truck and found that the bag contained 15 kilograms of cocaine. They also searched the Lincoln Avenue home and seized a money counting machine, a cocaine press (which renders the cocaine in brick form), and a gym bag identical to the bag Edge had in his truck. The bag

2

contained four bricks of cocaine of one kilogram each and a fifth brick that amounted to slightly less than a kilogram.

Maxshure was charged, along with numerous other co-defendants, with one count of conspiracy to distribute and possess with intent to distribute at least five kilograms of cocaine. At the time of his arrest, Maxshure stated: "You only caught me with the money." A105. At his initial appearance on July 18, 2011, however, after the District Court had warned Maxshure of his right to remain silent, Maxshure called over a DEA agent and confessed: "We're guilty. You got us. I'll plead tomorrow. What do you want me to do. I'll plead guilty tomorrow. What do you want me to do." A144. On September 3, 2013, Maxshure withdrew his original not-guilty plea and pleaded guilty to the charge.

In Maxshure's Presentence Investigative Report (PSR), the U.S. Probation Office determined that he had conspired to distribute at least 150 kilograms of cocaine. This resulted in a base offense level of 38 pursuant to USSG § 2D.1(c)(1), and, after a 2-level reduction for acceptance of responsibility, a total adjusted offense level of 36. Maxshure's criminal history category was III, yielding an advisory Guidelines range of 235 to 293 months' imprisonment.

Maxshure contested the quantity of cocaine calculated in the PSR, arguing that the maximum amount that could be attributed to him was the 15 kilograms that were seized from Edge at the time of their arrest. The Government countered that it had sufficient evidence to corroborate the 150-kilogram calculation.

At sentencing, the District Court considered the PSR as well as the testimony of two of Maxshure's co-defendants—a customer and a supplier—who testified to Maxshure's involvement in the cocaine distribution conspiracy at an earlier suppression hearing.[1] Edge, the customer, testified that, in addition to the 15 kilograms he received from Maxshure on the day of his arrest, he had received an average of ten kilograms per month from Maxshure over the span of seven or eight months, and six kilograms in two deals with Maxshure prior to that period. Edge also testified that Maxshure had told him he could obtain 50 to 75 more kilograms of cocaine in the future.

Marco Valenzuela Bonilla, Maxshure's supplier and co-defendant, testified that on the day of his arrest—the same day that Maxshure and Edge were arrested—he had delivered 25 kilograms of cocaine to Maxshure. He stated that he had brought Maxshure at least 25 kilograms of cocaine once or twice a month between September 2009 until they were arrested in July 2011, and that in December 2010, "an unusual month," he delivered between 80 and 90 kilograms. A173-74. Moreover, Bonilla testified that he had met Maxshure through Reynaldo Lopez Salinas, who told Bonilla he had been providing Maxshure with cocaine for at least a year before that. Bonilla's testimony alone implicated at least 600 kilograms of cocaine.

The District Court accepted the PSR's determination that Maxshure was involved

---

[1] At the change of plea hearing, the District Court granted the Government's motion to incorporate witnesses' testimony from the suppression hearing the previous day.

in the sale of at least 150 kilograms of cocaine, and sentenced Maxshure to 235 months' imprisonment—the bottom of the Guidelines range—followed by five years of supervised release. This timely appeal followed.

## II[2]

On appeal, Maxshure contests the District Court's calculation of the drug quantity that determined his base offense level and its reliance on the testimony of his two co-defendants.

We review the sentencing court's factual determination of the drug quantity for clear error. *United  States v. Sau Hung Yeung*, 241 F.3d 321, 322 (3d Cir. 2001).  That determination must be supported by a preponderance of the evidence. *See United States v. Grier*, 475 F.3d 556, 561 (3d Cir. 2007) (en banc) ("Under an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error.") (discussing *United States v. Booker*, 543 U.S. 220 (2005)).

The Federal Rules of Evidence do not apply in sentencing hearings. Fed. R. Evid. 1101(d)(3). Therefore, a sentencing court may rely on hearsay evidence if that evidence has "sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3. In doing so, "[w]e recognize that in calculating the amounts involved in drug transactions,

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

5

some degree of estimation must be permitted." *United States v. Collado*, 975 F.2d 985, 998 (3d Cir. 1992).

Under Section 1B1.3 of the Sentencing Guidelines, a sentencing court must consider "relevant conduct" when determining the drug quantity that in turn determines a defendant's base offense level. Conduct "relevant" to a "jointly undertaken criminal activity," includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG § 1B1.3(a)(1)(B). Therefore, relevant conduct includes any "amounts of drugs possessed, distributed, manufactured, sold, or otherwise 'handled' by persons other than the defendant in the calculation of the defendant's base offense level." *Collado*, 975 F.2d at 990-91. "[W]hether a particular defendant may be held accountable for amounts of drugs involved in transactions conducted by a co-conspirator depends upon the degree of the defendant's involvement in the conspiracy and . . . reasonable foreseeability with respect to the conduct of others within the conspiracy." *Id.* at 992.

Our review of the record leads us to conclude that the District Court had a sufficient basis to find that Maxshure conspired to distribute at least 150 kilograms of cocaine. As noted above, Bonilla's testimony alone implicated a quantity exceeding 600 kilograms. Moreover, the amount of cocaine Bonilla claimed he transported on the day of the arrest—25 kilograms—corroborated his testimony about his monthly deliveries of 25 kilograms each, and is in turn corroborated by the fact that police caught Maxshure

selling 15 kilograms shortly thereafter, and found 5 more kilograms in the Lincoln Avenue house he had originally suggested as a meeting place.

Maxshure argues on appeal that his co-conspirators' testimony is insufficiently detailed and is unreliable because of their interest in receiving more lenient sentences. We disagree. Maxshure first contends that Edge and Bonilla "only testified as to 'how much' and 'how often.' There is no evidence of 'when,' 'in what manner,' 'where,' or any other logistical information . . . simply how much cocaine per month." Maxshure Reply Br. 6. Unfortunately for Maxshure, "how much cocaine per month" was precisely the information needed to determine the quantity of drugs attributable to him.

Maxshure also argues that because the quantities cited by Bonilla and Edge differ, they "do not corroborate each other." Maxshure Br. 13. Once again, we disagree. Bonilla's testimony that he supplied Maxshure with at least 25 kilograms per month over two years corroborates Edge's testimony that he purchased 15 kilograms per month from Maxshure during this period. Moreover, five additional kilograms were found in the Lincoln Avenue home, where Maxshure had suggested Edge meet him to purchase the drugs, and from where Maxshure had emerged with a gym bag to meet Edge at the corner. Edge's testimony corroborates Bonilla's, and vice versa. Corroboration in this context does not require equivalency.

Finally, Maxshure argues that his co-defendants' testimony is unreliable because of their prior records, and because of their interest in minimizing their own sentences. In

direct response to these arguments, the District Court stated:

> Well, the arguments you are making, of course, apply any time to a defendant in another case or a co-defendant. Let's say those arguments are standard.
>
> The guys come in here and they got a record and they have everything to gain by their testimony but I haven't heard anything to contradict that testimony either. . . .
>
> I'm satisfied the conviction stands for . . . 150 kilos.

A191.[3]

We give great deference to the sentencing court's assessments of witnesses' credibility. *See United States v. Brothers*, 75 F.3d 845, 853 (3d Cir. 1996). Given the lack of any inconsistencies in the co-conspirators' testimony even after rigorous cross examination, *compare United States v. Miele*, 989 F.2d 659, 664 (3d Cir. 1993) (finding that indicia of reliability were lacking where the single witness to Miele's drug possession testified to two significantly different amounts of cocaine), we defer to the sentencing court's determination that there were sufficient indicia of reliability to accept their testimony as true.[4]

---

[3] The full transcript reflects that the District Court stated: "I'm satisfied the conviction stands for 50 or more kilos of cocaine – 150 kilos." A191. Maxshure argues that this was not a clear finding and that we should therefore vacate and remand. We interpret this to be an instance where the Court misspoke and promptly corrected itself.

[4] The "indicia of reliability" standard is fairly low. *See United States v. Paulino*, 996 F.2d 1541, 1548 (3d Cir. 1993) ("An agent's recital of events concerning discussions with a reliable confidential informant, and recollection of a conversation relayed to another federal agent working on the same case, meet the standard of minimum indicia of reliability.").

8

\* \* \*

We find no clear error in the District Court's determination that the quantity of cocaine attributable to Maxshure was at least 150 kilograms. It follows that the judgment of sentence must be affirmed.