

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2006

# USA v. King

Precedential or Non-Precedential: Precedential

Docket No. 05-1728

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. King" (2006). *2006 Decisions.* Paper 663.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/663

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1728

———

UNITED STATES OF AMERICA

v.

DONALD JAMES KING,
Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cr-00358)
District Judge: Honorable William H. Yohn, Jr.

———

Argued April 18, 2006

Before: SLOVITER, AMBRO and MICHEL,[*] Circuit Judges

(Filed: July 11, 2006)

———

David L. McColgin   (Argued)
Defender Association of Philadelphia
Federal Court Division
Philadelphia, PA l9l06

    Attorney for Appellant

———

    [*] Hon. Paul R. Michel, Chief Judge of the United States
Court of Appeals for the Federal Circuit, sitting by designation.

Lesley B. Fitzgerald
Peter D. Hardy    (Argued)
Office of United States Attorney
Philadelphia, PA l9l06

————

OPINION OF THE COURT

————

SLOVITER, Circuit Judge.

If the procedural requirements for sentencing defendants that this court established are so inflexible that we cannot affirm any sentence when the district court fails to articulate its analysis in precisely the terms of those requirements, then we must vacate the sentence imposed in this case no matter how reasonable we believe it is. Under the circumstances of this case, we will not vacate the sentence imposed by the District Court. Instead, we affirm, but write to dispel any erroneous impression that we have relaxed those requirements. We proceed to explain our disposition.

I.

Defendant Donald James King appeals his sentence of seventy-two months imprisonment that was imposed by the District Court following his plea of guilty to one count of bank fraud in violation of 18 U.S.C. § 1344, and one count of use of a false social security number in violation of 42 U.S.C. § 408(a)(7)(B). King claims that the sentence is unreasonable and in violation of United States v. Booker, 543 U.S. 220 (2005), because the District Court did not follow proper procedure for imposing a sentence in excess of the range recommended by the Sentencing Guidelines (30–37 months imprisonment).[1]

———————————

[1] We have jurisdiction under 18 U.S.C. § 3742(a). See United States v. Cooper, 437 F.3d 324, 328 (3d Cir. 2006) (holding that an unreasonable sentence is imposed in violation of the law).

2

The events giving rise to this criminal prosecution took place during the years 1998 and 1999. Appellant King is a sixty-seven year old male who engaged in what is commonly known as "identity theft"— unauthorized use of the personal information of another person for the purpose of securing loans, obtaining credit cards, and financing purchases. In carrying out this crime, King used the social security number and date of birth of another man with the same name (hereafter "Victim"). In his plea colloquy, King admitted to employing these means to engage in a laundry list of transactions, including a mortgage on his primary residence, several consumer lines of credit and credit cards resulting in defaults totaling over $14,000, and loans for the purchase of expensive consumer items, such as a home entertainment system and luxury cars.[2] Some of these

---

[2] The transactions in which defendant King used the identity of the Victim extended back many years before the transactions listed in the indictment. The Government's brief lists the following:

A mortgage loan for $31,050 from Associates Financial Services Co. of Delaware (AFS) taken to secure King's residence at 2647 S. Massey Street in Philadelphia. King paid this loan in full.

Two consumer lines of credit from Beneficial HFC resulting in a total loss of $6,461.

Purchase of a home entertainment system financed by Dial National Bank resulting in a defaulted loan in the amount of $1,529.

Defaulting on a revolving line of credit with First USA Bank that resulted in a $4,907 loss.

Purchase of a 1995 Mercedes S320 for $33,995 on which King made no payments, resulting in repossession and resale with a $13,296 loss to Harris Savings Bank, which extended the loan.

vehicles, which included a Mercedes, a BMW, and a Lexus, were repossessed and resold, but some were never recovered. King admitted that his activities caused losses to financial institutions of $166,000.

On September 26, 2002, King pled guilty to bank fraud in violation of 18 U.S.C. § 1344, which carries a maximum sentence of thirty years imprisonment, and use of a false social security number in violation of 42 U.S.C. § 408(a), which carries a statutory maximum of five years. King failed to appear for his initial sentencing hearing on November 18, 2003. He was arrested on a bench warrant on March 16, 2004, after attempting to refinance one of the loans at issue in this prosecution.

---

Purchase of a 1995 BMW 325i for $20,700 on which King made no payments, resulting in repossession and resale with a $10,373 loss to Harris Savings Bank, which extended the loan.

Purchase of a 1996 Chevy Tahoe for $26,000 on which King made no payments. Harris Savings Bank lost the full amount of the loan as it was unable to recover the vehicle for resale.

Defaulting on a line of credit resulting in a $1,200 loss to Northwest Financial.

Defaulting on a credit card resulting in a loss of $1,670 to Providian Financial.

Purchase of a 1993 Lexus GS-300 for $19,046 on which King made no payments. WFS Financial lost the full amount of the loan as it was unable to repossess and resell the car.

Purchase of a 1992 Infinity for $12,059 on which King made no payments, resulting in repossession and resale with a $1,980 loss to WFS Financial, which extended the loan.

4

King was sentenced on February 25, 2005. The Booker decision was announced approximately six weeks before King's sentencing hearing. The District Court started by calculating the applicable range under the Sentencing Guidelines.[3] It adopted the Presentence Report ("PSR") and the stipulation of the parties that the amount of loss for sentencing purposes was $166,000, which corresponded to a base offense level of six. U.S.S.G. § 2F1.1. A seven-level increase was applied because the loss exceeded $120,000, and a two-level increase was applied because the offense involved more than minimal planning. See U.S.S.G. § 2F1.1(b)(2)(A). Another two-level increase was applied for obstruction of justice due to King's absconding before his sentencing hearing. U.S.S.G. § 3C1.1. King's offense level was accordingly seventeen, while his criminal history category was III, leading to an applicable Guidelines range of 30–37 months imprisonment.

The Government moved for a five-level upward departure in offense level based on severe non-economic harm to the Victim. U.S.S.G. § 2F1.1 cmt. 11. The District Court declined to consider this evidence strictly within the framework of the Guidelines, stating that it would instead take the Government's argument and evidence into account when determining the ultimate sentence under 18 U.S.C. § 3553(a). In response to the Government's motion for a five-level upward departure, the District Court stated:

> I guess my feeling is I really hadn't thought much about this, anything about this issue until this morning when I received defendant's sentencing memorandum. And I'm not sure that motions for upward departure are relevant in the post Booker era.
>
> It seems to me at first blush that it's more likely to not consider motions for upward departure, but then consider evidence of this type when making a final determination as to what the sentence should be after

---

[3] The Court applied the 1998 version of the Sentencing Guidelines.

taking the consideration and the sentencing guidelines.

So I'll hear what each of you have to say with reference to that.

App. at 71.

In support of its motion, the Government presented the testimony of the Victim. The Victim testified regarding the impact King's criminal activities had had on his life. He testified that he had first become aware someone was using his personal information in 1982, when he received a coupon book for a $3,000 loan that he had not taken out. He also started receiving numerous bills for credit cards at retail stores such as Sears and Bradlees, for items that he had never purchased. His employer (a large utility company) helped him investigate and he discovered that the defendant had been using his personal information. The Victim testified in state court regarding these events and King ultimately pled guilty to forgery in the Philadelphia Court of Common Pleas in 1983. The following year, the Victim's driver's license was suspended because King had been making unauthorized use of a copy of the Victim's license. King was convicted in Delaware state court for this offense. PSR 13. The Victim was forced to change the name on his license as a result of this event. Similar incidents began to occur again in 1998, when a block the Victim had installed on his credit expired.

The Victim estimated that since then he had spent over 500 hours calling loan agencies, banks, and department stores to protest charges he never made and to clear his credit. He had been forced to change the name on his driver's license because it was repeatedly suspended due to unpaid car loans and parking tickets on cars falsely registered to him.[4] He testified that he had

---

[4] King pled guilty to forgery in the Court of Common Pleas again in 1999 when he was arrested for presenting the Victim's driver's license as his own in order to purchase a car. He was sentenced to eleven months, fifteen days to twenty-three months imprisonment, but immediately paroled to home detention and two

suffered enduring anxiety and had difficulty engaging in ordinary commercial transactions because of the damage to his credit. He also testified that he feared King's activities would affect his ability to collect social security benefits.

The District Court credited the Victim's testimony. It concluded that "these facts are such that under the old regimen would clearly merit an upward departure," but that instead of granting the Government's motion, it would "consider these facts . . . in determining what my sentence eventually will be when I consider the factors under [§] 3553." App. at 77. Defendant King also spoke at the sentencing hearing. The relevant part of King's statement was as follows:

> First, I want to apologize to that Mr. King for all the problems that I may or may not have caused him from the fact of using his name. But it was never ever intended that I have, it was intended that I was going to enhance his credit, it was never intended that it was not going to pay for anything. If anything, I was going to make sure that his credit rating got enhanced far more better - -
>
> THE COURT: So you're trying to benefit him? Did you ever let him know that you want to help him out by enhancing his credit?
>
> MR. KING: I never seen him. Never seen him. Maybe 20 years or so, 10 years or so, second time I've ever seen him. But like I said, and these times the credit was used for him, it was, I had gotten hopefully, so I could be, like I said enhance, to make it better, never to make it worse. And I always have tried to do something to make Mr. King's credit better, never to make it worse, never ever my intent - -

App. at 90 (emphasis added).

Before announcing its sentence, the District Court

years probation.

7

proceeded to make a detailed analysis of King and the offenses. The Court stated at the beginning: "I must consider the sentencing guideline range which is 30 to 37 months . . .". App. at 93. The Court noted that there was not much "on the positive side of the ledger for the defendant, . . . [T]hat he has two children that he would like to take care of, but that is counterbalanced in my view by the fact that from December of [2003] when he absconded in this case, he voluntarily gave up custody of the children and they were placed in foster care" even though he was not incarcerated until March of 2004. App. at 93. "So obviously he wasn't thinking too much about caring for his children during that time." App. at 93. The Court noted that King suffered from prostate cancer, but that it was not acute, and that King's bladder cancer appeared to be in remission.

The Court then proceeded to consider the "very serious situations" on the negative side. App. at 94. For example,

> the severe harm to the [Victim] which was outlined today and is contained in my findings of fact with reference to his testimony which has been ongoing for a period of now 23 years, from beginning in 1982 because of this defendant's conduct. And certainly there is nothing in the guideline computation that takes that into consideration.

App. at 94. The Court noted that the defendant had at least 17 convictions from 1966 through 1999, most of which were not counted in the Guideline computation of King's criminal history category because of his age. Thus, the Court remarked that King's criminal history was "much more serious than is reflected in the guideline computation" and that the vast number of convictions showed "obviously a very high degree of potential for recidivism and . . . the guideline computation does not reflect how serious his criminal history has been." App. at 95. The Court also noted that King had shown no remorse or rehabilitation. Significantly the court also stated:

> His explanation today that he did this to enhance the credit report of the [Victim] is probably the most absurd statement I have heard in 23 years of this business, and shows that he just has no comprehension of what he has

8

done and no apprehension of his culpability and no remorse for what he has done.

App. at 95.

The Court stated that the factors referred to required a sentence substantially higher than that called for by the Guidelines, which did not reflect the seriousness of the offenses committed by the defendant, particularly with reference to their impact on the victim. The Court further stated that the Guideline range "[did] not provide a just punishment for the defendant in view of his extensive criminal history and the impact on the victim." App. at 96. The Court concluded that a longer sentence was "necessary to protect the public from further crimes by the defendant." App. at 96.

Thereafter, the District Court sentenced King to seventy-two months imprisonment for bank fraud, 18 U.S.C. § 1344, and sixty months imprisonment for use of a false social security number, 42 U.S.C. § 408(a)(7)(B), to run concurrently. It also sentenced him to five years of supervised release following his term of imprisonment, and $87,035 in restitution.

## II.

In his appeal, King argues that although Booker rendered the Guidelines advisory, the district courts are still required to apply the methodology the court established for this Circuit prior to Booker for sentences above the Guidelines range. King contends that there must be some objective standards to guide the determination of reasonableness, and that at a bare minimum, the District Court was required to consult the Guidelines and policy statements in order to arrive at an appropriate departure. Accordingly, he continues, when departing upwards on a ground accounted for within the Guidelines, such as under-representation of criminal history, district courts are bound to apply U.S.S.G. § 4A1.3 and consider each higher criminal history category in sequence, as required prior to Booker. See United States v. Kikumura, 918 F.2d 1084, 1098 (3d Cir. 1990); United States v. Hickman, 991 F.2d 1110, 1114 (3d Cir. 1993). Moreover, King argues, in determining the

9

extent of departure the District Court relied upon the statutorily barred grounds that a lengthier term of imprisonment was necessary for rehabilitation.

The Government concedes that it would have been preferable for the District Court to have applied the "ratcheting procedure" required by Kikumura and Hickman for enhancing King's sentence on the basis of under-representation of criminal history. See Kikumura, 918 F.2d at 1098; Hickman, 991 F.2d at 1114. The Government agrees that the District Court should have ruled on its motion for an upward departure on the basis of harm to the victim. However, the Government emphasizes, King did not object in the District Court to the procedure used by the court. Specifically, King never called to the court's attention its failure to apply either the rule of Kikumura or Hickman. Because of that, it argues that the sentence should be affirmed under plain error. According to the Government, the record demonstrates that under the pre-Booker regime the District Court would have granted its motion for a five-level upward departure in offense level on the basis of harm to the victim and applied a one-level increase in criminal history category. This would have resulted in a criminal history category of IV, and an offense level of twenty-two, which would have led to a sentencing range of 63–78 months. The sentence imposed by the District Court, 72 months imprisonment, lies in the middle of this range. Accordingly, the Government concludes, King's substantial rights were not affected, and the sentence should be affirmed.

III.

We state at the outset of our analysis that we believe the District Court erred in failing to follow the ratcheting or analogic procedure that this court set out in Hickman and Kikumura. King concedes that at sentencing he did not specifically object to the District Court's failure to follow those procedures. He argues that nonetheless he has not waived his objection to the process both because he did object to any sentence above the Guideline range and because this court in its decision in United States v. Freeman, 316 F.3d 386, 391 (3d Cir. 2003), reviewed the District Court's failure to follow our mandated procedure based on Freeman's objection to the imposition of a sentence

above the Guideline range.

We treat the issue before us not as one of waiver but of the appropriate standard of review and agree with the Government that plain error review applies. See Fed. R. Crim. P. 52(b); Booker, 543 U.S. at 268 (holding that ordinary prudential doctrines such as plain error review apply to sentencing appeals); United States v. Davis, 407 F.3d 162, 164 (3d Cir. 2005). Where a defendant demonstrates plain error affecting his substantial rights, we may reverse where the "fairness, integrity, or public reputation of judicial proceedings" were affected. United States v. Evans, 155 F.3d 245, 251 (3d Cir. 1998). An error affects substantial rights when it is prejudicial and affects the outcome of district court proceedings. Davis, 407 F.3d at 164.

It is important to note that the District Court did not characterize the final sentence it imposed as a departure. It appears that the court, having taken into account the required considerations, then left the Guideline scheme behind and chose a sentence it deemed appropriate for the reasons it set forth. We would have done little about it in the pre-Guideline era. As we stated in Kikumura, "[u]nder the old regime, sentencing discretion was essentially unreviewable." Kikumura, 918 F.2d at 1110. That period was followed by the mandatory Guidelines regime under which we exercised de novo review. In order to provide some content to our review of the reasonableness of a sentencing court's departure (either downward or upward), this court in Kikumura established the principle requiring the sentencing court to apply analogic reasoning, i.e., looking to the Guidelines for policy statements other than the one directly applicable to find a suitable analogy. See id. at 1110-14. Thereafter, in our decision in Hickman, 991 F.2d at 1114, we added the requirement of sequential ratcheting through the criminal history categories to find a category that adequately reflects the seriousness of the defendant's past criminal conduct. We required the sentencing courts to articulate these steps so that we would have a basis for our review.

If we were still under the pre-Booker mandatory Guideline scheme, the failure of the District Court to have

11

expressly followed that approach would likely have required remand because we would have presumed prejudice. However, since Hickman and Kikumura, the Supreme Court has declared the Sentencing Guidelines to be advisory only. Booker, 543 U.S. at 259. Although sentencing courts still have a duty to consider the applicable Guidelines range under § 3553(a)(4), we have stated "[t]hat the guidelines are now advisory provides some play in the joints of the sentencing scheme." Cooper, 437 F.3d at 326 n.2. Accordingly, we will not presume prejudice but review for plain error.

After Booker, this Court must evaluate the reasonableness of a sentence in light of the factors in 18 U.S.C. § 3553(a). Cooper, 437 F.3d at 327–28. The party challenging the sentence has the burden to demonstrate unreasonableness. See id. at 332.

"To determine if the court acted reasonably in imposing the resulting sentence, we must first be satisfied the court exercised its discretion by considering the relevant factors." Id. at 329. Our review of the record convinces us that the District Court, in fact, did so. The factors a sentencing court must take into account include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
>
> (2) the need for the sentence to reflect the seriousness of the crime, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed education or vocational training, medical care, and other correctional treatment in the most effective manner, § 3553(a)(2);
>
> (3) the kinds of sentences available, § 3553(a)(3);
>
> (4) the applicable Guidelines sentence, § 3553(a)(4);
>
> (5) the pertinent policy statements of the Sentencing Commission, § 3553(a)(5);

(6) the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and

(7) the need to provide restitution to victims, § 3553(a)(7).

We note that these factors overlap to some degree with the bases for potential Guidelines departures. For example, in this case, the Government moved to increase King's offense level on the basis of severe, non-economic harm to the victim, an aspect of the "nature and circumstances of the offense" that could also be accounted for under § 3553(a)(1). Similarly, although the District Court could have permissibly applied U.S.S.G. § 4A1.3 to increase King's sentence on the ground that his criminal history category was too low, King's criminal history is an aspect of his "history and characteristics." § 3553(a)(1). And as the District Court observed, because King had repeatedly victimized the same person, even after his convictions in both federal and state courts for related offenses, there was also a need to provide adequate deterrence and to protect the public, in particular, the Victim in this case. Section 3553(a)(2) requires consideration of the need for the sentence imposed in order to "reflect the seriousness of the offense," "afford adequate deterrence," "protect the public," and "provide just punishment." 18 U.S.C. § 3553(a)(2)(A)–(C).

Furthermore, as required by § 3553(a)(4), the District Court calculated a "correct guidelines range applicable to the defendant's particular circumstances," adopting the recommendations of the PSR, which calculated King's offense level as seventeen, applying several adjustments based on obstruction of justice and loss amount. Cooper, 437 F.3d at 330. We decline to hold that it was necessarily error to increase King's sentence by applying § 3553(a) instead of potentially applicable Guidelines departures. We are satisfied that the District Court considered the relevant factors in this case, and that it reasonably applied those factors to the circumstances of this case. See Cooper, 437 F.3d at 330.

That the resulting sentence was nearly double the top of the Guidelines range does not make it per se unreasonable. Id. at

13

331–32.  Such a significant departure must be adequately supported by the record.  See, e.g., United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006); United States v. Jordan, 435 F.3d 693, 696-97 (7th Cir. 2006) ("The farther a sentence varies from the advisory guidelines range, the more compelling the judge's reasons must be."); see also Kikumura, 918 F.2d at 1110 (holding prior to Booker that the degree of departure must be reasonable).  The District Court provided an adequate explanation of the sentence on the record.  Cooper, 437 F.3d at 329–30.  It gave extensive attention to the circumstances of King's life and offense and the harm done to King's Victim.  The Victim's testimony provided a portrait of King as a career criminal who was not deterred by prosecution in state or federal courts from continuing to use the Victim's personal information for financial gain, and who failed to appear for sentencing after he pled guilty in federal court until he was apprehended once again trying to use the Victim's information.  The District Court also observed King's lack of remorse and comprehension of the harm done by his actions.

A lengthy prison sentence was clearly warranted in order to prevent and deter King from reoffending, as well as to provide adequate punishment for his conduct.  The seventy-two month sentence is still well below the statutory maxima of thirty-five years (thirty years for bank fraud, five years for false use of a social security number).  The trial court is in "the best position to determine the appropriate sentence in light of the particular circumstances of the case."  Id. at 330; Kikumura, 918 F.2d at 1110 (holding prior to Booker that district courts were entitled to a substantial amount of discretion in determining the extent of a departure).

Sentencing King just six weeks after Booker, the District Court was operating without guidance from this court which has not yet fleshed out how closely it will hold district courts to pre-Booker practice with respect to calculations of the Guidelines range.  We have, however, cautioned against per se rules that "effectively re-institute mandatory adherence to the Guidelines."  Cooper, 437 F.3d at 331 (citation omitted); see also United States v. Webb, 403 F.3d 373, 385 n.9 (6th Cir. 2005); United States v. Mykytiuk, 415 F.3d 606, 607 (7th Cir.

14

2005); <u>United States v. Talley</u>, 431 F.3d 784, 787 (11th Cir. 2005). <u>Booker</u> itself gives little direction as to how closely sentencing courts are to adhere to the formerly mandatory Guidelines. <u>See</u> <u>Booker</u>, 543 U.S. at 259–60 (holding only that judges are required to "consider" the applicable sentencing range, pertinent policy statements, the need to avoid unwarranted sentencing disparities, and other factors from § 3553(a)). In this case, we find that King's substantial rights were not affected by any error that did occur because the record demonstrates that, under the old regime, the District Court would have granted the Government's motion to depart under U.S.S.G. § 2F1.1 cmt. 11, and increased King's offense level by at least one level on its own motion under § 4A1.3.

In considering the Government's motion to enhance King's offense level based on severe harm to the victim, the District Court stated: "[I]t seems to me that these facts are such that under the old regimen would clearly merit an upward departure, since they are facts that are not considered by the guidelines." App. at 77. The Court stated: "I will enhance his sentence because of the extensive nature of his criminal history. What would have been under the old regimen an upper departure because it fails to adequately represent the seriousness of his prior criminal history and the possibility that he will commit further crimes." App. at 78.

Because the District Court did in fact touch all the bases required, we will affirm the sentence imposed.[5] We see nothing to be gained by remanding so that the District Court can articulate that which is already clear. Nevertheless, we emphasize that the sentencing courts in this Circuit should continue to follow the requirement to "consider" the Guidelines by calculating a Guidelines sentence as they would have before <u>Booker</u>, including formally ruling on the motions of both parties

---

[5] Our result is consistent with that recently reached by this court in <u>United States v. Vampire Nation (Banks)</u>, No. 05-1715, ___ F.3d ___ (3d Cir. June 20, 2006) (differentiating between traditional departures under the Guidelines and variances from the Guidelines based on <u>Booker</u>).

and stating on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and taking into account this Circuit's pre-Booker caselaw, which continues to have advisory force.  See, e.g., United States v. Hawk Wing, 433 F.3d 622, 631 (8th Cir. 2006) (stating that courts should calculate Guidelines ranges just as they would have before Booker); United States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005) ("The applicable Guidelines range is normally to be determined in the same manner as before Booker/Fanfan."). As noted earlier, the district courts must continue to follow the procedures mandated in Kikumura and Hickman before determining the appropriate sentence to be imposed.

Finally, they should observe the requirement to state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review.[6]

## IV.

For the foregoing reasons, the sentence imposed on Donald King by the District Court is affirmed.

---

[6] We reject King's argument that the District Court relied upon the statutorily barred ground that a lengthier term of imprisonment was necessary for rehabilitation.  See 18 U.S.C. § 3582(a) ("imprisonment is not an appropriate means of promoting correction and rehabilitation"). The District Court found that a shorter term of imprisonment would not provide just punishment and that a longer sentence was necessary to deter the defendant from committing further crimes.  Section 3553(a)(2)(D) requires the District Court in handing down a sentence to consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."