

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2007

# USA v. Young

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5032

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Young" (2007). *2007 Decisions.* Paper 1673.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1673

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No.: 05-5032

UNITED STATES OF AMERICA

v.

SHERROD YOUNG,
                          Appellant
————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No.: 01-cr-00401-3
District Judge: The Honorable Edwin M. Kosik
————————————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 14, 2006

Before: SMITH and ROTH, *Circuit Judges*,
and YOHN, *District Judge\**

(Filed:  February 6, 2007)

————————————

OPINION

————————————

————————————

        *The Honorable William H. Yohn Jr., Senior District Judge for the Eastern District
of Pennsylvania, sitting by designation.

YOHN, *District Judge*.

On February 10, 2003, a jury found Sherrod Young guilty of one count of conspiracy to distribute and possess with intent to distribute in excess of 50 grams of crack cocaine in violation of 21 U.S.C. § 846, and three counts of distribution and possession with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). Young's presentence report initially held him accountable for 1.5 kilograms or more of crack cocaine.[1] Subsequently, the government agreed the readily provable drug quantity was between 500 grams to 1.5 kilograms.[2]

On May 6, 2004, the first day of Young's sentencing hearing, the government called FBI Agent Kevin Wevodau, who had interviewed people involved in the conspiracy, in order to establish an estimate of the drug quantity attributable to Young. Agent Wevodau testified that Melissa Lynn Martin, a co-defendant, stated that she made at least eight to ten trips with Young and Kevin Dowdy, another co-defendant, to New York to purchase about 60 grams of crack cocaine per trip.[3] Evaluating Agent

---

[1] This amount yielded a base Offense Level of 38. Young's presentence report added two-level firearm and three-level managerial enhancements for a total Offense Level of 43. The resulting guideline sentence was life imprisonment.

[2] The second addendum to Young's presentence report incorporated this reduction and stated a total Offense Level of 41, yielding a sentence range of 324 to 405 months.

[3] Agent Wevodau also spoke to Dawn Phillips, Carl Laserre, Michelle Kowalski, Vince McHenry and Rosemary Lewis about trips they made with Young and Dowdy and, in some cases, also with Bernard Jones, another co-defendant, to New York to purchase crack cocaine. Agent Wevodau testified to the following. Phillips made six trips with Dowdy and Young during the spring to summer of 2001, purchasing 80 to 180 grams per trip. Laserre recounted four or five trips in mid-2001 with Dowdy, Jones and Young for purchases in the amount of two to three

2

Wevodau's testimony regarding his conversation with Martin alone, the District Court stated, "I'm fairly satisfied that, by the most conservative estimate, that we have at least 598 grams of crack cocaine."[4]  On May 11, 2004, the second day of Young's sentencing hearing, the District Court concluded that "there is sufficient indicia of reliability to support the amount of drugs that the Government wishes to attribute to this Defendant by conservative estimates."  The District Court sentenced Young to 324 months of imprisonment.  Young appealed.

We affirmed his conviction, but vacated his sentence and remanded for resentencing in accordance with the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220 (2005).  *United States v. Young*, 149 Fed. Appx. 107 (3d Cir. 2005) (unpublished). At Young's resentencing hearing held on November 2, 2005, Young's counsel argued for a "substantially" reduced sentence based, in part, on the disparity between crack and powder cocaine penalties in the sentencing guidelines.  The

---

thousand dollars, or about 100 grams, per trip.  Kowalski made two trips in summer of 2001 with Dowdy or Young for a baseball-sized quantity, or about 50 grams, per trip.  Lewis acknowledged at least two trips with Dowdy and Young for an unspecified quantity.  McHenry stated he made five trips with Dowdy and Young for an unspecified quantity.

[4]At the conclusion of the first part of Young's sentencing hearing, the District Court asked both parties to submit estimates of drug quantity attributable to Young.  The government's estimate, submitted to the District Court on May 11, 2004, "involved at least 1,460 grams of crack cocaine."  Young's brief contends, without pointing to a source, "[o]n May 11, 2004, prior to the sentencing hearing, the United States stated that the maximum amount of crack attributable to Young was 150 grams to 500 grams."  This statement by Young is contrary to the government's submitted estimate and to the record, which does not reflect a departure from the government's allegation that the readily provable quantity of 500 grams to 1.5 kilograms contained in the second addendum to Young's presentence report was correct.

3

District Court responded:

> Granted, that the guidelines were very harsh when we're dealing with crack cocaine, but that's what was intended by Congress, and I don't think that the Judges have a right to legislate, whether we agree or disagree, because that is basically not our role. But under *Booker*, because the guidelines are now advisory, they are, nevertheless, required to be considered by the Court, even under [18 U.S.C. §] 3553(a), that's one of the things of all the elements that are indicated in that statute, we are obligated by that legislation to give serious consideration to the guidelines in fashioning a sentence.

(App. 43A.) On remand, the District Court imposed a sentence of 210 months of imprisonment. This timely appeal followed.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). *See United States v. Cooper*, 437 F.3d 324, 327-28 (3d Cir. 2006).

Young makes two arguments on appeal. First, he contends that his sentence is too severe, or "greater than necessary," because it was the result of an unreasonable disparity between the penalties for crack cocaine and powder cocaine under the sentencing guidelines.[5] He states that if his case had involved powder cocaine, the quantity attributable to him would have yielded a total Offense Level of 31 and a minimum of 108 months. Young also complains that the evidence as to the quantity of crack cocaine was not reliable for several reasons. First, Agent Wevodau's testimony contained hearsay and

---

[5] 21 U.S.C. § 841(b)(1) contains drastically different punishments for crack and powder cocaine, requiring one hundred times more powder cocaine than crack cocaine to trigger inclusion in a particular sentencing range. *Id.* The United States Sentencing Commission adopted this sentencing disparity in the federal Sentencing Guidelines. *See U.S. Sentencing Guidelines Manual* § 2D1.1(c) (2006).

the credibility of Agent Wevodau's interview subjects was dubious. Second, only two of the individuals interviewed by Agent Wevodau – Martin and Kowalski – testified at Young's trial, and their trial testimonies did not involve drug quantities attributable to Young.

Young's contention that his sentence is unreasonable because the sentencing guidelines' crack/powder cocaine disparity made his sentence too severe is without merit. Before *Booker*, we routinely upheld the disparity against constitutional attack, including equal protection, cruel and unusual punishment, and vagueness claims. *See, e.g. United States v. Frazier*, 981 F.2d 92, 95-96 (3d Cir. 1992); *United States v. Jones*, 979 F.2d 317, 320 (3d Cir. 1992), *superseded by statute as stated in United States v. Roberson*, 194 F.3d 408, 417 (3d Cir. 1999). After *Booker*, we addressed the issue of whether it is legal error for a District Court to believe that it had no discretion to impose a below-guidelines sentence on the basis of the crack/powder cocaine disparity. *United States v. Gunter*, 462 F.3d 237, 244 (3d Cir. 2006). In *Gunter*, we held that "district courts may consider the crack/powder cocaine differential in the Guidelines as a factor, but not a mandate, in the post-*Booker* sentencing process." *Id.* at 249.

In this case, the District Court correctly applied our post-*Booker* sentencing process, which includes calculating a defendant's guidelines sentence in the same manner as it would have before *Booker*. *See Gunter*, 462 F.3d at 247 (citing *United States v. King*, 454 F.3d 187, 196 (3d Cir. 2006) and *Cooper*, 437 F.3d at 330). The District Court also did not suggest that applying the guidelines' penalties for crack cocaine was

5

mandatory, rather it stated "the guidelines are now advisory." Thus, it reduced Young's

pre-*Booker* sentence of 324 months, when the guidelines were mandatory, to 210 months

under the post-B*ooker* advisory regimen. The District Court's apparent consideration and

application of the current statutory crack/powder cocaine ratio was an appropriate

exercise of its discretion pursuant to § 3553(a). *See Gunter*, 462 F.3d at 247 (citing *King*,

454 F.3d at 194). Honoring Young's request of an even lower sentence based on a more

"justified" ratio would have flouted Congress' intent embodied in § 841 and the

Commission's incorporation of this intent in the sentencing guidelines.[6] *See Gunter*, 462

F.3d at 247 ("[F]ederal courts of appeal have unanimously held that . . . sentencing courts

may not craft their own ratio as a substitute for the 100:1 ratio chosen by Congress.").

Young's argument that his sentence is unreasonable also overlooks the District

Court's additional consideration of his background, including his history of drug use, his

family situation, and his lack of criminal record, as well as the goal of achieving parity

among his co-defendants. The District Court took into account the firearm and leadership

role enhancements, and imposed a sentence 114 months below the minimum guidelines

range. Thus, we find that the District Court's consideration and application of the

crack/powder cocaine ratio did not render Young's sentence unreasonable.

Young's second argument that the District Court erroneously found that 500 grams

---

[6] In *Gunter*, we summarized the three instances where the Commission has urged Congress to modify federal cocaine sentencing policy by reducing the crack/powder cocaine ratio. 462 F.3d at 239-44. Each time, Congress has declined to reform the ratio. *Id.*

to 1.5 kilograms of crack cocaine were attributable to him is also unpersuasive. The standard of proof for sentencing facts under the sentencing guidelines remains preponderance of the evidence. *Cooper*, 437 F.3d at 330. We review the District Court's findings of fact on the issue of drug quantity for clear error. *United States v. Miele*, 989 F.2d 659, 663 (3d Cir. 1993). Before *Booker*, we held that using hearsay for sentencing purposes does not violate the Sentencing Reform Act. *United States v. Brothers*, 75 F.3d 845, 848 (3d Cir. 1996). "The sentencing court can give a high level of credence to hearsay statements, going so far as to 'credit hearsay evidence over sworn testimony, especially where there is other evidence to corroborate the inconsistent hearsay statement.'" *Id.* (quoting *Miele*, 989 F.2d at 664). Further, *Booker* does not provide a basis for holding hearsay inadmissible at sentencing, especially as the Supreme Court did not invalidate 18 U.S.C. § 3661.[7] *Booker*, 543 U.S. at 259 (stating that "with [18 U.S.C. §§ 3553(b)(1) and 3742(e)] excised, . . . the remainder of the Act satisfies the Court's constitutional requirements"). The sentencing guidelines also permit a District Court to consider "relevant information without regard to its admissibility under the rules of evidence applicable to trial." *U.S. Sentencing Guidelines Manual* § 6A1.3(a). This includes reliable hearsay. *Id.* at cmt. (citing § 3661). However, both our precedent and the sentencing guidelines require that a sentencing fact have "sufficient indicia of

---

[7]18 U.S.C. § 3661 states: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a Court of the United States may receive and consider for the purpose of imposing an appropriate sentence." § 3661.

reliability to support its probable accuracy." *Brothers*, 75 F.3d at 848 (internal quotations omitted); *see also* § 6A1.3(a). We have directed District Courts to apply the sufficient indicia of reliability standard "rigorously," *Miele*, 989 F.2d at 664, but have also recognized that "in calculating the amount of drugs involved in a particular operation, a degree of estimation is sometimes necessary." *United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir. 1993).

In this case, the District Court determined by a preponderance of the evidence that Young was responsible for 500 grams to 1.5 kilograms of crack cocaine. The District Court found sufficient indicia of reliability to support this amount of drugs, even by highly conservative estimates, based on "a lot of testimony, over a period of time" and on the fact that "much of the evidence was alluded to at the trial." Even though Young asserts that only two out of the six individuals interviewed by Agent Wevodau testified at his trial, the District Court found these trial witnesses' exposure to cross examination was an "important factor" in its consideration of the evidence on the issue of drug quantity in Young's sentencing hearing. In addition to the trial record, the District Court had at its disposal the testimony of Agent Wevodau, which was notably specific both in the number and timing of the trips individuals involved in the conspiracy took with Young and in the quantity of drugs purchased during these trips,[8] and extensive argument from the government's and Young's attorneys during Young's sentencing and resentencing

---

[8]*See supra* note 3.

hearings.  Thus, the record clearly supports the District Court's finding that 500 grams to 1.5 kilograms were attributable to Young.  Accordingly, the District Court did not commit clear error, and we will affirm the District Court's judgment of sentence.