**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2568
_____

UNITED STATES OF AMERICA

v.

THURMAN H. SMITH,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 10-cr-00546-001)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit LAR 34.1(a)
January 17, 2014
_____

Before: RENDELL, ROTH and BARRY, Circuit Judges

(Opinion Filed: February 5, 2014  )
_____

OPINION
_____

BARRY, Circuit Judge

        Thurman H. Smith appeals the judgment of the District Court sentencing him to 18

months' imprisonment for violation of his supervised release.  Smith contends that the

Court procedurally erred in arriving at this sentence and that the sentence itself is

substantively unreasonable.  We find his arguments unavailing, and will affirm.

## I.

On August 11, 2009, Smith entered a plea of guilty in the Middle District of Pennsylvania to one count of distribution and possession with the intent to distribute cocaine base within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1) and 860(a).  On December 21, 2009, he was sentenced to time served (26 months and 19 days in prison) and six years of supervised release with various conditions.  He began his term of supervision in the Middle District, but, on August 17, 2010, the District of New Jersey assumed jurisdiction.

In October 2010, the Probation Office filed a petition charging that Smith had violated five conditions of his release: (1) failing to notify his probation officer of a change of residence; (2) failing to report for drug testing and testing positive for marijuana use; (3) failing to obtain employment; (4) failing to report for scheduled meetings with his probation officer; and (5) committing another crime while under supervision, as he was arrested by local police in New Jersey for obstruction of law enforcement activities.  On October 12, 2010, Smith appeared before the District Court for the District of New Jersey and pled guilty to the first two violations.  The Court sentenced him to seven months' imprisonment to be followed by a four-year term of supervised release, again subject to special conditions, including a requirement that he refrain from drug use.  Smith was released from prison and began serving his new term of supervised release on April 28, 2011.

Less than a week later, Smith tested positive for and admitted to using the drug PCP. Based on the recommendation of his probation officer, the District Court did not find him in violation of the conditions of his release and instead ordered that he submit to increased drug testing and participation in counseling and drug treatment as necessary. He thereafter participated in drug treatment without issue and submitted negative urine samples. He remained unemployed for the duration of his period of supervised release, however, and, although he began working toward a GED, he did not complete the program.

On November 11, 2011, while still under federal supervision, Smith committed two unrelated acts of aggravated assault in Lindenwold, New Jersey, again violating his conditions of release. In the first incident, Smith and two others attacked a man who was walking near an apartment complex, punching him repeatedly in the face and head. The victim sought treatment for his eye at a New Jersey hospital and was eventually transferred to the Wills Eye Hospital in Philadelphia due to the severity of his injury. Also that day, Smith, armed with a pair of scissors, and another male punched and robbed two individuals outside of a local convenience store. Smith was arrested by local police shortly thereafter and taken into custody. He pled guilty to two counts of aggravated assault in Camden County Superior Court on April 16, 2013.

On May 21, 2013, Smith appeared before the District Court and pled guilty to a single Grade A violation of his supervised release based on his commission of the two Lindenwold assaults. At the colloquy, the Court asked Smith whether he had committed

3

two crimes in Lindenwold, New Jersey and whether he had pled guilty to two counts of aggravated assault in Camden County Superior Court. Smith answered "[y]es" to each question. (App. at 38-39.)

The District Court accepted Smith's guilty plea and turned directly to the matter of sentencing. Based on the nature of Smith's supervised release violation and his criminal history category, he faced a maximum statutory sentence of 36 months' imprisonment, 18 U.S.C. § 3583(e)(3), and an advisory Guidelines range of 15 to 21 months in prison, U.S.S.G. § 7B1.4(a).

Smith, through counsel, acknowledged that "in November of 2011 he made some very poor choices . . . and got involved in some fights," but argued that his original conviction was for a low-level drug offense, more like those prosecuted in state, rather than federal, court. (App. at 40-41.) Counsel noted that Smith had already served a significant amount of time for that offense and, accordingly, requested imposition of a prison sentence at or near the bottom of the Guidelines range. Counsel also asked the District Court to refrain from requiring an additional term of supervised release. The government, for its part, requested a sentence near the low end of the Guidelines range, as well as a term of supervised release. Smith was offered the opportunity to speak on his own behalf, but declined. When asked what he would like to say, Smith stated, "[n]othing." (App. at 46.)

The District Court ultimately imposed a middle-of-the-Guidelines range sentence of 18 months to be followed by an additional term of supervised release for two years.

4

The Court observed that this was the second time Smith was before it on a violation of supervised release, and that the present violation, two aggravated assaults of random individuals, was "not just some technical violation[]." (App. at 49-51.) Noting that "one of the reasons for a sentence is to promote respect for the law," the Court opined that a second violation within months of release from prison indicates that a releasee is "not taking federal supervision very seriously" and that the Court's prior seven-month sentence obviously had not deterred Smith from breaking the law. (App. at 51.) In the Court's estimation, Smith's violation warranted a punishment "above and beyond whatever the punishment is for the underlying crime." (App. at 51.) The Court further concluded that additional imprisonment was necessary to protect the community and, along with supervised release, would hopefully impel Smith to find a job, earn his GED, and become a productive member of society. The Court credited Smith for admitting his responsibility for the assaults by pleading guilty to them, but found that "Mr. Smith has nothing to say and hasn't said that he's sorry and just seems to be rather unremorseful." (App. at 52.) Smith timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e)(3). We have jurisdiction pursuant to 18 U.S.C. § 3742(a)(1) and 28 U.S.C. § 1291.

We review a judgment of sentence, including a sentence for violation of supervised release, first for procedural and then substantive reasonableness. *United States v. Young*, 634 F.3d 233, 237 (3d Cir. 2011); *United States v. Tomko*, 562 F.3d 558,

564-67 (3d Cir. 2009) (en banc). Where a defendant raises a claim of procedural error for the first time on appeal, we review for plain error. *United States v. Berger*, 689 F.3d 297, 299 (3d Cir. 2012). This is the standard even if the claim is predicated on a constitutional violation. *United States v. Lopez*, 650 F.3d 952, 959 (3d Cir. 2011). To satisfy plain error, a defendant must demonstrate that (1) there is an error; (2) the error is clear or obvious; (3) the error affected the defendant's substantial rights; and (4) the error seriously impacts the "fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Even when that standard is met, we need not correct the error unless it would be a "miscarriage of justice" not to do so. *United States v. Tyson*, 653 F.3d 192, 211 (3d Cir. 2011) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

When assessing the substantive reasonableness of a sentence, we apply the deferential abuse of discretion standard of review. *Tomko*, 562 F.3d at 564. "Absent procedural error, we will affirm the sentencing court 'unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided.'" *United States v. Doe*, 617 F.3d 766, 770 (3d Cir. 2010) (quoting *Tomko*, 562 F.3d at 568).

## III.

Smith objects to his sentence as both procedurally and substantively unreasonable. First, he contends that the District Court violated his Fifth Amendment right against compulsory self-incrimination by imposing an 18-month sentence as punishment for his

6

exercise of this constitutional right, through his silence, at the revocation hearing.[1]

Because he did not raise this claim before the Court, we review for plain error. *Berger*, 689 F.3d at 299. Second, Smith argues that the sentence imposed was unreasonably excessive.

Smith has failed to establish a procedural defect, much less one that is plainly erroneous. The Fifth Amendment provides that no person "shall be compelled in any *criminal* case to be a witness against himself." U.S. Const. amend. V (emphasis added). In claiming that the District Court violated this right by considering his silence at sentencing, Smith relies on *Mitchell v. United States*, 526 U.S. 314, 326-30 (1999), which held that a court may not draw any adverse inference from a defendant's refusal to testify at sentencing when making factual determinations relating to "the circumstances and details of the crime" at issue. He cites no authority, however, extending *Mitchell*'s no-adverse-inference rule to a hearing on a revocation of supervised release; indeed, there is reason to doubt that the rule is to be so applied. A revocation hearing "is not a criminal proceeding," and a probationer is not entitled to the privilege against compelled self-incrimination when his testimony would be used solely to determine the propriety of

---

[1] Although, in his briefing, Smith asserts that the sentencing procedure "ran afoul of his Fifth Amendment right against self-incrimination," he goes on to argue that his claim somehow does not implicate that right and is instead based on what he perceives to be a different violation, the deprivation of a "constitutionally-sound revocation process . . . free of coercion." Appellant's Br. at 13. But Smith was not coerced to say or do anything at his revocation hearing, and the gist of his claim is that the District Court imposed a harsher than requested sentence because he chose to remain silent at sentencing. We, therefore, understand Smith to allege that the Court violated his Fifth Amendment right to remain silent by penalizing him for its invocation.

7

rescinding his release. *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984). It, therefore, was not plain or obvious that Smith's decision not to speak at his revocation hearing was protected by the Fifth Amendment, at least where, as here, his testimony "posed no realistic threat of incrimination in a separate criminal proceeding." *Id.*

That last point is important. It is accepted that, "as a general rule, . . . where there can be no further incrimination, there is no basis for the assertion of the privilege." *Mitchell*, 526 U.S. at 326. Smith had already pled guilty to the two assaults that formed the basis of his supervised release violation, and, at the hearing before the District Court, confirmed that he had committed those assaults and had entered a guilty plea in his New Jersey criminal proceeding.

Furthermore, Smith did not inform the District Court that his decision to remain silent at the revocation hearing was based on an assertion of his rights under the Fifth Amendment. As the Supreme Court has noted, "[t]he Fifth Amendment privilege against compelled self-incrimination is not self-executing." *Roberts v. United States*, 445 U.S. 552, 559 (1980). Where there is "no substantial reason to believe that the requested disclosures are likely to be incriminating, the privilege may not be relied upon unless it is invoked in a timely fashion" and "at a time when the sentencing court could have determined whether [the privilege] claim was legitimate." *Id.* at 559-60. Smith's response to the District Court that he had nothing to say on his own behalf was not an obvious assertion of the privilege and could have been—and, indeed, was—construed as a lack of remorse. *United States v. Keskes*, 703 F.3d 1078, 1090-91 (7th Cir. 2013)

8

(assessing an identical Fifth Amendment claim); *see also United States v. Martorano*, 866 F.2d 62, 70 n.8 (3d Cir. 1989).

A releasee's lack of remorse is an appropriate factor for a court to assess when fashioning a sentence. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. King*, 454 F.3d 187, 195 (3d Cir. 2006) (identifying lack of remorse as an appropriate sentencing consideration). The *Mitchell* Court expressed no opinion as to whether a sentencing court may infer a lack of remorse from a defendant's silence, 526 U.S. at 330, and Smith cites no binding authority holding that a sentencing court is barred from doing so where, as here, there is no reason to believe that unexpressed remorse could be used for an additional incriminatory purpose.[2] Any error in that regard was surely not "plain."

In any event, the District Court's sentence of 18 months in prison was well-supported. In settling on this sentence, the Court considered the factors relevant to sentencing under 18 U.S.C. § 3583(e). It acknowledged that Smith's imprisonment would cause hardship for his family and that he had accepted responsibility for the

---

[2] In *United States v. Heubel*, 864 F.2d 1104 (3d Cir. 1989), a case that Smith cites, the defendant invoked his Fifth Amendment right to silence at sentencing to avoid answering questions that may have left him open to subsequent prosecution for conspiracy, a crime with which he had not yet been charged. *United States v. Mitchell*, 122 F.3d 185, 189 (3d Cir. 1997) (discussing *Heubel*), *rev'd on other grounds*, 526 U.S. 314. The defendant in *Heubel* also expressly asserted, through counsel, his Fifth Amendment right to remain silent. 864 F.2d at 1106, 1111.

assaults by pleading guilty.  However, the Court also found that a substantial term of imprisonment, given the violent nature of the assaults and that this was Smith's second violation of federal supervision, was necessary to protect the community and to deter him from future wrongdoing by driving home the point that he needed to take his supervision seriously.  The Court concluded that further confinement and supervised release would hopefully be the impetus for him to secure employment and a GED.  Finally, the Court found a lack of contrition not only from Smith's recalcitrance at the hearing but also from his failure to apologize for his conduct and the fact that he generally seemed unremorseful.  Accordingly, any constitutional error did not seriously impact the "fairness, integrity or public reputation of [Smith's] judicial proceedings," *Marcus*, 560 U.S. at 262, and no miscarriage of justice would flow from our refusal to vacate the sentence, *Tyson*, 653 F.3d at 211.

It follows that the sentence imposed was not substantively unreasonable.  The 18-month sentence was not so long or burdensome that "no reasonable sentencing court would have imposed the same sentence on [him] for the reasons . . . provided" by the District Court.  *Tomko*, 562 F.3d at 568.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.